IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ANDREW NGUYEN, M.D., an individual,
ANDREW NGUYEN, M.C., P. A.,
A Florida Professional Association, and
LINH NGUYEN

      Plaintiffs,

          vs.                    Case No. 1:04CV26-MMP

UNITED STATES DRUG ENFORCEMENT
ADMINISTRATION, et al.

      Defendants.
_____/

**UNITED STATES' MEMORANDUM OF LAW AND FACT IN SUPPORT
OF IT S MOTION TO DISMISS , ALTERNATIVELY FOR SUMMARY JUDGMENT**

COMES NOW, Defendant the UNITED STATE OF AMERICA, represented by the

undersigned Assistant United States Attorney, which submits the following as its Memorandum

of Law  and Fact in Support of  its Motion To Dismiss, Alternatively,  For Summary Judgment.

**<u>Plaintiff's Allegations</u>**

This case arises out of the March 2000, arrest of plaintiff  Dr.  Andrews Nguyen by

Deputy Sheriff  Kenneth Carlisle of the Gilchrist County Sheriff's  Office  under a state

arrest warrant charging him with six felony counts of Delivery of a Controlled Substance

893.13(1)(a), Florida Statutes.  (Pl's 2d amd cmp.¶ 13) .  After his arrest Dr.  Nguyen

surrendered his DEA certificate which had allowed him to dispense controlled substances.

(Plaintiff's Motion For Partial Summary Judgment, Material Uncontested Facts, # 51. The  State

Attorney's Office for the Eighth Judicial Circuit,  in May, 2000, filed a *nolle prosequi* of the

charges against Dr.  Nguyen. (Pl's Ex.  14) Dr.  Nguyen was not charged in federal court.

In his Second Amended Complaint filed herein, the Plaintiff  Dr. Nguyen  alleges two types of alleged wrongful acts against the United States , through the Drug Enforcement Administration. (DEA, hereinafter).  The first category would allege the  state law common law torts of false arrest and false imprisonment(Count I), and malicious prosecution (Count VIII). The second category of claims against the DEA is plaintiff's claim of a violation of his Civil Rights in that  the DEA "deprived him of the right to be secure in his person and property against unreasonable seizures of his person and property in violation of the Fourth and Fourteenth Amendments of the United States Constitution."  (Count III, ¶ 56).  Plaintiff also alleges a conspiracy to violate his civil rights by the United  States, and deputy Kenneth Carlisle.  (Count VII)

> **I.     The Court Lacks Subject Matter Jurisdiction Over All of Plaintiff's Claims Herein Against the United States Because DEA Diversion Agents Are Not Investigative or Law Enforcement Officers Within the Meaning of 29 U.S.C. § 2680(h) Because They Lack Arrest and Other Authority**

The United States can be sued only with its consent because of the principle of sovereign immunity.  "no action lies against the United States unless the legislature has authorized it." *Dalehite v. United States,* 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427, 1438 (1953). Moreover, Congressional waivers of governmental immunity are to be construed in favor of the sovereign. *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26, 30 (1951) The Federal Tort Claims Act (hereinafter, "FTCA"), 28 U.S.C. §1346(b), 2671-2680,   is a general  waiver of sovereign immunity with many exceptions.  *Sutton v.  U.S. ,* 819 F.2d 1289, 1292 (5th Cir. 1987).  One such exception to the sovereign immunity of the U.S. under the FTCA, was enacted by Congress by amending the Act  on March  16, 1974, P.L. 93-253, 88 Stat. 50, to permit suit against the United States for certain  torts of  federal "investigative or law

2

enforcement officers", to wit:

**28 U.S.C. § 2680(h)**, **Exceptions**

The provisions of this chapter and section 1346(b) of this title shall not apply to--

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights:  Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.  For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

This act was passed because of one incident, among others,  in which federal and state agents  raided the wrong  houses and allegedly roughed up the occupants.  *Sutton v United States,*  819 F.2d 1289, 1294,1295, n. 11, 1296. (5th Cir. 1987). These cases resulted in the United States Supreme Court case of  *Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971),  which for the firs time held that in certain circumstances individuals in certain case have a right of action  against federal officers under the United States Constitution for violations of their rights by federal and state law enforcement officers.        If the conduct alleged by a plaintiff  falls within the statutory exceptions in § 2680(h), the court lacks subject matter jurisdiction over the action. *Dalehite v. United States*, 346 U.S. 15, 24 (1953); *Jablonski v. United States*, 712 F.2d 391, 395 (9th Cir.1983); *Boda v. United States*, 698 F.2d 1174, 1176 (11th Cir.1983); *Gibson v. United States*, 457 F.2d 1391, 1392 n. 1 (3rd Cir.1972); *Konecny v. United States*, 388 F.2d 59, 62 (8th Cir.1967). These defenses are jurisdictional and can be raised at any point in the proceedings. *Jablonski at*  395; *Boda* at 1176;  *Stepp v. United States*, 207 F.2d 909 (4th Cir.1953), *cert. denied*, 347 U.S. 933 (1954).

3

It has been held that the United States can be liable under § 2680(h) only if the alleged tort arose out of the law enforcement officer's specific actions in executing a search, seizing evidence or making an arrest. *Pooler v. U.S.* 787 F.2d 868, 873 (3rd Cir. 1986), *cert denied* 479 U.S. 849, 107 S.Ct. 175(1986).

Robert Yakubec, a DEA diversion inspector officer, who was originally named as Defendant in this case, and then dismissed, and for whose acts the United States was substituted as defendant by operation of law because he was certified by the United States Attorney as acting at all pertinent times within the scope of his authority, was not a "federal investigative or law enforcement officer" at the pertinent times involved in this case, within the terms of § 2680(h), so as to create liabilty of the United States for his actions or inactions, as will be shown herein.

### Statutory Basis For DEA Authority

The registration and authority of physicians and pharmacists to prescribe controlled substances and the dispensing thereof is comprehensively regulated by federal law.21 U.S.C. §§ 821-830. State law also provides for the licensing of physicians and pharmacists, a legal prerequisite to their federal authority to dispense narcotics. F.S.A. 120.60. The DEA is empowered by law to enforce the registration, record keeping requirements and the and dispensing of controlled substances laws and has been given certain power and authority to do so delegated by the Attorney General of the United States.[1] 21 U.S.C. § § 875-881. Among these powers are the right to " hold hearings, sign and issue subpenas(sic), administer oaths, examine

---

[1] These powers are delegated to the DEA and certain DEA officials by the Appendix to Subpart R, Redelegation of Functions, Drug Enforcement Administration, 28 CFR §§ 0.104.(Ex. 1 attached hereto)

witnesses, and receive evidence at any place in the United States." 21 U.S.C. § 875(a). Section 850 (a,b,c) of the Act authorizes administrative inspections of controlled places where records relating to controlled substances are required to be kept and where these substances are lawfully held, manufactured, distributed or dispensed [§ 850(a)(2), (b)] and the authority to apply for warrants for administrative searches. [ §850(d)]. The DEA is also authorized to seek forfeitures of controlled substances and other property involved in illegal acts. 21 U.S.C. § 881.

In order to prescribe controlled substances to patients, physicians are required to have a DEA issued certificate allowing them to do so at each location that they practice. 21 U.S.C. § 822(a)(2), (e). These licenses must be renewed every one to three years. *Id.* § (a)(2). The DEA, through the Attorney General, "is authorized to inspect the establishment of a registrant or applicant for registration..." Id. § 822(f). The DEA through the Attorney General may suspend or revoke the registration of a physician for various causes including, for conviction of a felony under any law state or federal relating to a controlled substance.[ 21 U.S.C. § 824(a)(2)], for having his state license or registration suspended, revoked or denied if he is no longer authorized by state law to engage the distribution of controlled substances. [21 U.S.C. § 824(a)(3)], and if he has committed such acts as would render his registration under section 823(relating to registration requirements) inconsistent with the public interest as deterrmined under such section." [§ 824(a)(4).]

The prescription of drugs by a physician without a valid certificate is a violation of the Controlled Substances Act. 21 U.S.C. § 841, part of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 841-851. Additionally, under the law and regulations , the prescription of drugs by a physician must be for a "legitimate medical purpose or within the scope of professional practice." 21 U.S.C. 841(a)[2] and 21 C.F.R. § 306.04[3]. U.S. v. Green, 511

---

[2] 21 U.S.C. 841(a)

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--

F. 2d 1062, 1070 n. 20.(7th Cir. 1975), <u>cert denied</u> <u>Green v. U.S.</u>, 423 U.S. 1031, 96 S.Ct. 561(1075). It has been held that expert testimony as to the propriety of a physicians course of practice is not essential to government's case in proceeding before the DEA for revocation of certificate of registration to distribute certain drugs regulated by the Controlled Substances Act. *Noell v. Bensinger* 586 F. 2d 554(5th Cir. 1978).

If a physician claims his DEA Registration and Certificate were unlawfully suspene4d or revoked he must first exhaust his administrative remedies with DEA to seek to have them returned to him before seeking relief in court. *Harline v DEA*, 148 F. 3d 1199, 1202-1203 (10th Cir. 1998). *cert denied* by *Harline v. Department of Justice*, 525 U.S. 1068, 119 S. Ct. 798 (1999). .Plaintiff did not exhaust his administrative remedies here and thus cannot pursue a claim of unlawful suspension in this court.

### DEA Enforcement Agents

Enforcement agents of the DEA are divided generally into two classifications, criminal investigators (series 1811 under Office of Personnel Management regulations, and DEA Diversion Investigators (series 1801). 28 C.F.R. § 0.104. Appendix to Subpart R, Sec. 3(a, b). Each classification of officer has different powers and authority. , to wit:.

**Sec. 3. Enforcement officers.**

--------

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. . . .

[3]

21 C.F.R. s 306.04 provides:

(a) A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner

>**(a)** All DEA **criminal investigators** (series 1811 under Office of Personnel Management regulations) and special agents of the FBI are authorized to exercise all of the powers of enforcement personnel granted by 21 U.S.C. 876, 878, and 879; to serve subpoenas, administer oaths, examine witnesses, and receive evidence under 21 U.S.C. 875; to execute administrative inspection warrants under 21 U.S.C. 880; and to seize property under 21 U.S.C. 881 and 21 CFR 1316.71 et seq.
>
>**(b)** All DEA **Diversion Investigators** (series 1801 under Office of Personnel Management regulations) are authorized to administer oaths and serve subpoenas under 21 U.S.C. 875 and 876; to conduct administrative inspections and execute administrative inspection warrants under 21 U.S.C. 878(2) and 880; to seize property incident to compliance and registration inspections and investigations under 21 U.S.C. 881; and to seize or place controlled substances under seal pursuant to 21 U.S.C. 824.

The provisions of 21 U.S.C. §878 regarding the powers of DEA officers are modified by the restrictions imposed by the Appendix to Subpart R, 28 CFR, § 0.104.

As can be seen there are real differences in the authority of each type of agent. DEA Diversion agents are not given arrest authority nor "all of the powers of enforcement personnel granted by 21 U.S.C. 876, 878, and 879." Appendix, Sec. 3(a). Title 21 U.S.C. § 878 as modified by Sec 3(a) of the Appendix, grants DEA criminal law enforcement investigators the authority to:

>"**(1)** carry firearms;
>**(2)** execute and serve search warrants, arrest warrants, administrative inspection warrants, subpenas, and summonses issued under the authority of the United States;
>**(3)** make arrests without warrant (A) for any offense against the United States committed in his presence, or (B) for any felony, cognizable under the laws of the United States, if he has probable cause to believe that the person to be arrested has committed or is committing a felony;
>**(4)** make seizures of property pursuant to the provisions of this subchapter; and
>**(5)** perform such other law enforcement duties as the Attorney General may designate."

DEA Diversion Inspectors do not have these same powers. The only provision of § 882 directly applicable to DEA Diversion Inspectors is " to conduct administrative inspections and

execute administrative inspection warrants under 21 U.S.C. 878(2) and 880." Appendix to

Subpart R, Sec. 3(b).  DI Robert Yakubec did not have the power to arrest a suspect nor to carry

a weapon. (Ex. 1, p. 42, ll. 11-18; p. 43, ll. 7-18 ).

Thus it can be seen that DEA Diversion Inspectors, such as Robert Yakubec are not

traditional federal investigative or law enforcement officers for whose actions the United States

is legally responsible under the FTCA, 28 U.S.C. § 2680(h).

**Jurisprudence**

The federal courts have interpreted the law enforcement exception to the FTCA.

The Fifth Circuit Court of Appeals decided in *Sutton v. U.S.*, 819 F.2d 1289, 1292 (5th Cir.

1987). in remanding the case to the district court, that the question of whether a federal employee

is a "federal law enforcement officer" under the FTCA., §2680(h), is a matter of fact to be

determined after an evaluation by the district court of "the nature and conduct" of the parties

specifically set forth  in the pleadings and whether it  " is of the nature and quality for which

Congress intended to include in permitting claims for some intentional torts." *Id*. at 1300.

In *Solomon v. U. S*., 559 F.2d 309(5th Cir. 1977), *reh'g denied*, 564 F.2d 98 (5th Cir.

1977)**,** the Court held that security employees of a military exchange are not investigative or law

enforcement officers within the meaning of § 2680(h) and that the plaintiff's claim was

completely barred by sovereign immunity.

In *Metz v. U.S.*, 788 F.2d 1528 (11th Cir. 1986), the Court held that the provision of §

2680(h) cannot be expanded to include governmental actors who procure law enforcement

actions but who are themselves not law enforcement officers.

In *DeLong v. U.S.*, 600 F.Supp. 331, 334 to 335 (D.C. Alaska 1984 ) it was held that

marine guards were not federal law enforcement officers within the meaning of 28 U.S.C. § 2680(h) in that they are  are not empowered by law to investigate crimes, to arrest suspects, and to search for and seize evidence of crimes.  The Court held further that:

> To the extent that in  performing his duties a guard must detain an individual and temporarily seize from his custody weapons, intelligence gathering equipment, and contraband, I find that these actions are incidental to his performance of his authorized duties as a sentry which do not include law enforcement functions. The performance of these incidental activities cannot elevate the duties of guards to those of law enforcement officers who are "empowered by law" to perform traditional law enforcement functions.

*Id.*  at 224-335.

In *Wilson v. U.S.*, 959 F.2d 12 (2d Cir. 1992), the Court held that parole officers were not federal law enforcement officers under 28 U.S.C. § 2680(h).

### Application of the Law To the Facts

The United  States acting through DEA Diversion Investigator Robert Yakubec, is accused in this case of falsely arresting Plaintiff  Dr.  Nguyen, in violation of state law, violating Dr.  Nguyen's civil rights in wrongfully seizing his DEA certificate at the time of his arrest and in  maliciously prosecuting him.  Plaintiff claim is under the FTCA.  Because DI Yakubec lacked the authority to make an arrest of Dr.  Yakubec, and did not make such an arrest, nor did he seize any property of Plaintiff, he was not  acting as a federal law enforcement officer at the pertinent times herein, within the meanng of 28 U.S.C. § 2680(h).  DI Yakubec acted within the scope of his authority as a DI in accepting  the voluntary surrender of Dr.  Nguyen's DEA certificate allowing him to prescribe controlled substances,  however, that act is not claimed nor can it be tortious here as it is clear that the DEA could suspend a physicians certificate once he has been arrested . 21 U.S.C. § 824(a). On August 23, 2003, Dr.  Nguyen's DEA certificate was restored once the state charges were dismissed.  (Defendant  's  Ex.  6). This is only a *de minimis* claim

9

by plaintiff. The Court thus lacks subject matter jurisdiction over the United States.

In conclusion,  the United States submits that the Court lacks subject matter jurisdiction over this case because DI Yakubec, on whose actions plaintiff's  case is based,  was not a "federal investigative or law enforcement officer" for whose actions the United States can be liable  under the FTCA, 28 U.S.C.  §2680(h).

II.       **The United States cannot be Held Liable Under the FTCA  for the negligent actions or omissions of Persons Who Are Not Employees of the United States**

Plaintiff asserts for the first time in his Memo in Support of Partial Summary Judgment that the state and county actors in this case were in effect agents or employees of the United States for whose actions the United States is liable, citing the cases of *Van Schaik v.  U.S*., 586 F. Supp. 1023 (D. S.C. 1983) and *Means v.  U.S.* 176 F.  3d 1376 (11th Cir.  1999).  *See* Plaintiff Memo, pp.  3-5.  This is not a correct interpretation of the law.  Under the FTCA, the United States can only be liable for the torts of federal employees 28 U.S.C. §§ 1346(b)(1), 2671, 2672, 2679(b)(1).  In *Van Schaik* a  County deputy sheriff and city police officer were authorized in writing by an assistant United States attorney to arrest plaintiff on drug charges and were thereby found by the to be"officers of the United States" within the meaning of the Federal Tort Claims Act.  There was no such authorization here.  *Van Schaik* does not state a universal principle and should be limited to its unusual facts.

The *Means* case,  at 1380-1381, found that the state and local agents in that case were not employees of the United States which could subject the U.S. to liability under the FTCA. because the U.S. government did not supervise "the day-to-day activities of the individual who allegedly committed the tortious acts."  Nor did DI Yakubec control the day to day actions of the state and county agents in this case.

10

Even  federal employees cannot be deemed to be federal law enforcement officers merely because they may assist in a criminal  investigation. . *Metz v. United States,* 788 F.2d 1528, 1532 (11th Cir.), *cert. denied,* 479 U.S. 930 (1986) (holding that the scope of S§ 2680(h) could not be expanded to include governmental actors who procured law enforcement actions but who were themselves not law enforcement officers); *Turner v. U.S.***,** *1990 WL 254982, \*2 (D. Kan. 1990).*

The *Metz* Court, at 1533, also affirmed the principle that a plaintiff cannot avoid the reach of §§ 2680(h) by framing a complaint in terms of negligent failure to prevent an assault and battery. Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery.  The same principle would apply to claims of false arrest, false imprisonment or wrongful seizure.

In conclusion, the United States is not liable for any alleged tortious acts of the state and county officials involved in this case.

### III.  The United States Is Entitled to the Discretionary Function Defense

To the extent Plaintiff claims any type of negligent or wrongful investigation or prosecution in this case, including the use of a confidential informant by the United  States, and/or the improper training and supervision of DEA officials, and thus malicious prosecution, the United States  would assert that the discretionary function defense of the FTCA, would bar any recovery by Plaintiff  herein. 28 U.S.C. § 2680(a).  That exception to the liability of the U.S. under the  FTCA,  provides that:

**§§ 2680. Exceptions**

The provisions of this chapter and section 1346(b) of this title shall not apply to--

**(a)** Any claim based upon an act or omission of an employee of the Government,

11

exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The U.S. is not asserting here that the discretionary function defense would immunize it from liability for any violation by federal law enforcement officers of a constitutional or statutory right of Plaintiff,  however,  the U.S. submits that plaintiff has not proven any such violation here.

Here the actions of DI Robert Yakubec in seeking to investigate Dr.  Nguyen for violations of the criminal laws, his use of an inforrmant and his conduct of the investigation leading up to the arrest and prosecution of  Dr.  Nguyen were all matters within the discretion of agent Yakubec as a DEA Diversion Inspector, to which  the United States is entitled to the discretionary function defense.  28 C.F.R.  § 0.104.  Appendix to Subpart R, Sec.  3(b) See Defendant's   Statement of Uncontested Material Facts # 1-6.

In *Littell  v. United States*, 191 F. Supp.2d 1338, 1344 (M.D. Fl.  2002), the Court summarized the law of discretionary function:

> "The overwhelming consensus of federal case law establishes that criminal law enforcement    decisions--investigative and prosecutorial alike--are discretionary in nature
> and, therefore, by Congressional mandate, immune from judicial review. *Mesa v. United States*, 837 F.Supp. 1210, 1213 (S.D.Fla.1993) (citing *Pooler v. United States*, 787 F.2d 868, 871 (3d Cir.1986), *cert. denied,* 479 U.S. 849, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986)). See also *Rourke v. United States*, 744 F.Supp. 100, 103 (E.D.Pa.1988), *aff'g*, 909 F.2d 1477 (3d Cir.1990); *Attallah v. United States,* 955 F.2d 776, 784 (1st Cir.1992)."

The case of *Gray v. Bell*, 712 F.2d 490 (D.C. Cir. 1983), *certiorari denied* 465 U.S. 1100, 104 S.Ct. 1593 (1984), is an important case addressing the discretionary function defense of the

federal government to law enforcement activities.  There it was held that the "Prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception" *Id.* at 199.  The Court there  found that plaintiff was required to clear the "discretionary function" hurdle and to satisfy the "investigative or law enforcement officer" limitation to sustain the malicious prosecution component of his FTCA claim.  *Id.* at 507-508.

In *Smith v. United States*, 375 F.2d 243 (5th Cir.), *cert. denied*, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967) it was held that the decisions on when, where and against whom to prosecute are discretionary under § 2680(a).

The case of *Sutton v United States* 819 F.2d 1289, 1292 (5th Cir. 1987),  cites with  approval, at p.  1298,  the decision of the Third Circuit in  *Pooler v. United States,* 787 F.2d 868 (3rd Cir.1986), *cert. denied,* --- U.S. ----, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986). There the plaintiff asserted an FTCA claim charging that a police officer hired by the VA to root out illegal narcotics sales at one of its hospitals pursued a careless investigation and used an unreliable informant. The majority in *Pooler* stated that, "when the sole complaint is addressed ... to the quality of the investigation as judged by its outcome, the discretionary function ... does apply." 787 F.2d at 871.

The court of appeals in *Sutton* remanded the case to the district court for a factual determination relative to the defenses asserted by the Government.

 Here DI Yakubec did not violate any of Plaintiff's constitutional  rights nor any federal statutory rights thus there is no reason why the discretionary function defense should not be

found applicable here.

In Conclusion, the only proven acts of DI Yakubec were done in his discretion and thus they all fall within the discretionary function exception to the liability of the United States under the FTCA.

### IV.   The United States Cannot Be Liable for the Alleged Constitutional Torts of its Employees.

To the Extent Plaintiff is alleging that the United States is liable to hin under the United States Constitution and/ or 42 U.S.C. §1983, 1988, such claim fails to state a claim insofar as Robert Yakubec was acting at all pertinent times in his capacity as a federal employee, under color of federal law, thus the United States cannot thus be liable to Plaintiff under §1983 or 1988. Furthermore, the law is clear that constitutional torts are not within the scope of the Federal Tort Claims Act because Congress has not waived sovereign immunity with respect to constitutional violations. 28 U.S.C. § 1346(b); *F.D.I.C. v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308(1991); *United States v. Timmons*, 672 F. 2d 1373, 1380 (11th Cir. 1982) (United States has not waived its sovereign immunity from liability for an award for damages arising from purported violations of constitutional rights by its agents); *Brown v. U.S.*, 653 F.2d 196(5th Cir. 1981) Thus, to the extent that the Plaintiffs would attempt to allege a constitutional claim against the United States, it should be dismissed. *Albajon v. Gugliotta*, 72 F. Supp. 2d 1362, 1367 (S.D. Fla. 1999).

### V.   The United States Cannot Be Found Liable Here For False Imprisonment and False Arrest

The United States cannot be liable to Plaintiff under the law of the state of Florida[4] for

---

[4] Under the FTCA the United States may only be liable to a plaintiff for the torts of its employees "under circumstances where the United States, if a private person, would be liable to

his alleged false arrest ad imprisonment for several reasons.  First and most importantly DI

Robert Yakubec was not acting as a "law enforcement officer of the United States at the time of

Dr.  Nguyen's arrest, within the  meaning of the FTCA  because he had no authority to arrest him

and did not do so.  *See* discussion  *infra* ¶ 1; Def 's Ex.  1- Depo of Yakubec, p. p.  42, ll.  7-25;

p.  44,  l. 1;  Plaintiff/s Ex.  1 to Summary Judgment Motion, Carlisle Affidavit-p.1).  Similarly

DI Yakubec did not seize anything from Dr.  Nguyen or from his office. Deputy Carlisle arrested

Dr.  Nguyen.  (Plaintiff 's Ex.  1) DI Yakubec  did not  did not seize any evidence from Dr.

Nguyen or from his office. DI Yakubec was empowered to request and accept surrender of Dr.

Nguyen's DEA Drug certificate allowing him to prescribe narcotics and did so, however, that act

did not constitute a tort and was authorized by law.

Plaintiff's claim that he was falsely imprisoned by the defendants fails to state a claim

under Florida law and the common law because he was arrested for probable cause under a

warrant issued by a State Court Judge .(Df's Ex.  2)  As stated in the case of *Jackson v. Navaro*,

665 So. 2d 340, 342 (Fla. App. 4th 1995), *citing Prosser*: where the Plaintiff was arrested based

on a capias not  a warant:

> "The difference is one of the regularity of the legal process
> under which the Plaintiff's interests have been invaded. If
> he is arrested or confined without a warrant or legal
> authority apart from a warrant, malicious prosecution will
> not lie, since the essence of that tort is the perversion of
> proper legal procedure, and the remedy is false
> imprisonment. On the other hand, if there is legal process
> or due authority apart from it, the arrest is not "false" and
> the action must be one for malicious prosecution.:

the claimant  *in accordance with the law of the place where the act or omission  occurred*", ie
Florida state law.  (emphasis added)  28 U.S.C. § 2672.

If a mere capias based upon a filed information can nullify an action for false imprisonment where the warrant is issued by the clerk of the court rather than after presentation to and prior to approval by a judge, certainly a signed warrant issued by a circuit judge ought to be afforded at least the same respect. False imprisonment is not independently actionable. It is simply a compensable element of damages for a false arrest when one fails, so does the other. *Hernandez v. Metro-Dade County*, 992 F. Supp 1365 (S.D. Fla. 1997).

Here plaintiff was incarcerated pursuant to an Arrest Warrant issued by a Florida Court (Def s Ex.  2) thus he cannot prove an essential element of the tort of false imprisonment, ie., that he was subject to "an improper restraint which is not the result of a judicial proceeding." and "without color of authority."  *Jackson v. Navarro*, at 342.   Moreover plaintiff was clearly restrained "under color of authority", the arrest warrant from the  Court. Thus plaintiff cannot prove a case of false imprisonment.

Plaintiff has alleged that the defendants presented false testimony to the court in the affidavit in support of the arrest warrant and also omitted certain facts which if presented would have negated the issuance of the warrant.  These facts are not proven.  None of the investigating officers know of the CI's extensive past  medical history with Dr.  Nguyen.  Moreover the agents did not know that the confidential source had been prescribed these drugs four years before. They only learned that on the day of  Dr.  Nyguen's arrest, when a copy of her medical records were obtained from Dr.  Nguyen by means of a subpoena by an agent of the  Florida Agency For Health Care Administration (ACHA), not by DI Yakubec.  (Ex.  1-p.  12, ll.  7-12; p.  9, ll1-5; p. 11, ll. 11-20; p.  12., ll.  3-12; p.  13,  ll 18-25; p.  25, ll.  16-25).

Obtaining the CI's medical records before or during the undercover investigation was not standard DEA procedure (Def's Ex. 1, p. 16, ll 17-23; p. 17, ll 1-21; p. 18, ll 1-4) and would be likely to create suspicion in the doctor's mind. No intentionally false statements or omissions were made to the circuit judge to obtain the arrest warrant in this case. The Investigating officers believed that the CI was a reliable and truthful informant. (Ex. 3- Depositon of Kenneth H. Carlisle, p. 37,, ll. 5-11).

. It must be noted that Dr. Nguyen was accused in the arrest affidavit (Plaintiff's Ex. 1) and charged by the State Attorney with prescribing drugs "by use of a written order for said drug not issued in good faith and in th course of his professional practice, contrary to section 893.13(1)(a)(2), Florida Statutes.." (Df's Ex. 2-Arrest Warrant). The issue of whether this was true is not a fact but a matter for the jury calling for a conclusion and was not clearly false.

## VI. The United States Cannot Be Found Liable Here For Malicious Prosecution

In order to establish malicious prosecution Plaintiff would have to establish lack of probable cause for commencement of the original case that is alleged to have been malicious. *Pinaud v. County of Suffolk* , 52 F.2d 1139 (2d Cir. 1995). This plaintiff cannot possibly do. *Bolanos v. Metropolitan Dade County*, 677 So. 2d 1005 (Fla. App. 3rd 1996). In order to state a claim for malicious prosecution under Florida law, as under the common law, a plaintiff must allege that:

> (1) The commencement or continuance of an original criminal or civil judicial proceeding. (2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding. (3) Its bona fide termination in favor of the present plaintiff. (4) The absence of probable cause for such proceeding. (5) The presence of malice therein. (6) Damage conforming to legal standards resulting to plaintiff. If any one of these elements is lacking, the result is fatal to the action.

17

*Burns v. GCC Beverages, Inc.*, 502 So.2d 1217 (Fla.1986) at 1218.

Plaintiff's blunt assurance that malice can be inferred from the absence of probable cause rather ignores the unique counter-presumption that defendant enjoys in these circumstances. The Plaintiff was arrested pursuant to a warrant. The issuance of an arrest warrant by a judge causes a presumption of probable cause which can only be overcome by proof of fraud or other improper means used in securing its issuance. *Burns* at 469 So2d 806 (1 DCA 1985). st That presumption is conclusive unless there is fraud or corruption. *Colonial Stores Inc. V. Scarbrough*, 355 So2d 1181 (Fla. 1978). *Burns* is significant here in that it is factually quite similar.  There a police officer received a report of an employee theft by an employer. Armed with that information and from "interviews", the officer went to a county judge and swore to information that had been provided to him by others. The Court held that the officer's strong presumption of probable cause could only be defeated by proof of fraud or corruption and no such proof existed.

A review of the Plaintiff's Statement of "Material Undisputed Facts" shows that the Plaintiff does not even address this issue much less offer up undisputed facts from which fraud or corruption could be established by direct evidence or inference. Defendant's testimony, as outlined in their Statement of "Disputed Material Facts" certainly raises a bone of contention as to whether actual malice existed Since a warrant was obtained, Plaintiff must establish actual malice as opposed to legal malice. Such is inherently a question of fact subject to resolution only by the trier of fact.

Moreover there is no cause of action for conspiracy to maliciously prosecute.  Likewise, the cause of action for conspiracy to maliciously prosecute is itself non-actionable. *Fridovich v. Fridovich* 573 So.2d 65, 71(Fla. App. 4, 1990), *reversed on other grounds by Fridovich v. Fridovich*, 598 So.2d 65, (Fla. Apr 02, 1992); *Buchanan v. Miami Herald Pub. Co.*, 206 So.2d 465 (Fla. 3d DCA 1968), *modified on other grounds*, 230 So.2d 9 (Fla.1969)

Plaintiff's malicious prosecution allegations are clearly defective under the law.  Here plaintiff has not demonstrated that an employee of the United States was the legal cause of his arrest and brief incarceration.  Plaintiff  has not produced facts sufficient to warrant a finding of malice and he has not demonstrated his incarceration for contempt was without probable cause.

In the context of a civil rights action it has been held that a government official's good faith reliance on a valid Court Order or warrant compels a finding of absolute immunity *Mays v. Sudderth*, 97 3d 107 (5th Cir. 1996):

> Consequently, we conclude that an official acting within the scope of his authority is absolutely immune from a suit for damages to the extent that the cause of action arises from his compliance with a facially valid judicial order issued by a court acting within its jurisdiction.

*Id*. At 113.

In conclusion,  the United States is not liable here for malicious prosecution.

**VII.**      **The United States Cannot Be Found Liable Here For  Conspiracy**

Because the United  States cannot be held liable for the constitutional torts of its employees it  cannot be liable for a conspiracy to commit such a tort.  Any liability of the U.S. would have to be based on state law under the  FTCA.  Because there were no proven torts for which the United  States can be liable there can be no liability for conspiracy.

Moreover there is no cause of action for conspiracy to maliciously prosecute.  Likewise,

the cause of action for conspiracy to maliciously prosecute is itself non-actionable. *Fridovich v. Fridovich* 573 So.2d 65, 71(Fla. App. 4, 1990), *reversed on other grounds by Fridovich v. Fridovich*, 598 So.2d 65, (Fla. Apr 02, 1992); *Buchanan v. Miami Herald Pub. Co.*, 206 So.2d 465 (Fla. 3d DCA 1968), *modified on other grounds*, 230 So.2d 9 (Fla.1969).

A conspiracy itself is not violative of the Constitution.  Even if the U.S. could be liable for such torts, it is doubtful that an alleged conspiracy to violate a defendants civil rights even states a cause of action, if not brought under the specific Civil Rights Conspiracy Statutes, 42 U.S.C. §1985(3), 1986, because Congress did not provide for such relief.  *Ferguson v. City of Montgomery*, 969 F.Supp. 674, 681 (M.D. Ala. 1997).  If there is such a cause of action, a conspiracy allegation is not actionable without an actual violation of § 1983.  *Owens v. Bd. Of Regents of Texas Southern Univ.*, 951 F.Supp. 781 (S.D Tx. 1996); *Barkauski v. Indian River School District*, 951 F. Supp. 519 (D. Del 1996).  If the defendants have immunity to the substantive claims they have immunity to the conspiracy claims. *Zappala v. Albicelli*, (N.D.N.Y. 1997). there is no cause of action for conspiracy to maliciously prosecute.  *Fridovich v. Fridovich*, 575 So. 2d 65, 71 (Fla. App. 4, 1990); 599 So.2d 1010)**.**

The United States is entitled to summary judgment in its favor on this claim.

## **CONCLUSION**

In conclusion, the United States would submit that for all the foregoing reasons, it is entitled to dismissal of Plaintiff's claims herein for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Fed. R. Civ Pro 12(b)(1)(6). Moreover, Defendant submits that the material facts are undisputed and that it is entitled to summary

judgment as a matter of law, under Fed. R. Civ. Pro. 56(c).

Submitted this 5th day of July, 2005.

Respectfully submitted,
GREGORY R. MILLER
United States Attorney

/S/ROY F. BLONDEAU, JR.
ROY F. BLONDEAU, JR.
Assistant U. S. Attorney
Florida Bar 210013
111 North Adams Street, 4th Floor
Tallahassee, Florida 32301
(850)942-8430

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by

ECF-Mail and/or U.S. Mail this 5th day of July, 2005, to the following:

Robert A. Rush, Esq.
726 N.E. First Street
Gainesville, Florida 32601
Attorney for Plaintiffs

John W. Jolly, Jr., Esq.
Jolly, Peterson & Cherr, P.A.
Post Office Box 37400
Tallahassee, Florida 32315
Attorney for Kenneth Carlisle
and David Turner

/S/ROY F. BLONDEAU, JR.
ROY F. BLONDEAU, JR.
Assistant United States Attorney

**DEFENDANT  USA'S  EXHIBIT LIST**

**Nguyen v DEA, et al   Case No. 1:04CV26-MMP**

| Ex | Document | Date |
|---|---|---|
| 1. | Deposition of Robert Yakubec | 1-4-2005 |
| 2. | Eighth Judicial Circuit Arrest Warrant of Dr.  Nguyen | 3-23-2000 |
| 3. |  Voluntary Surrender of Controlled Substances Privileges | 3-23-2000 |
| 4. | Controlled Substances Certificate | |
| 5. | Receipt for Certificate | 3-23-2000 |
| 6. | Info form  re restoration of Certificate | 8-23-03 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |