IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


ANDREW NGUYEN, M.D., an individual,
ANDREW NGUYEN, M.C., P. A.,
A Florida Professional Association, and
LINH NGUYEN

      Plaintiffs,

          vs.                      Case No. 1:04CV26-MMP

UNITED STATES DRUG ENFORCEMENT
ADMINISTRATION, et al.

      Defendants.
_____/

**STATEMENT OF UNCONTESTED MATERIAL
FACTS OF DEFENDANT UNITED STATES**

COMES NOW, the UNITED STATES OF AMERICA, Defendant  herein, represented

by the undersigned Assistant United States Attorney, which for its Statement of Uncontested

Material Facts in connection with its Response to Plaintiff Motion For Summary Judgment and

Its Own Motion For Summary Judgment, avers:

The United States accepts and adopts herein as its Uncontested Material Facts,  the

following  Uncontested Material Facts pled in connection with Plaintiff's Motion For Summary

Judgment, pursuant to Local Rule 51.1(a), to wit:

# 8, 9, 10, 12, 13, 14, 15,16, 18, 19, 32, 36, 38,39,40, 41, 42, 51, 52, 54, 81, 62.

The United States does not accept as uncontested all  other alleged "Material

Uncontested Facts." Plaintiff 's purported Material Uncontested Facts # 22,23, 63, 64, 65, 66, are

argumentative statements and/or conclusions of law, which  are denied.

Defendant  the United States would further submit the following  facts as its Statement

of Uncontested Material Facts herein.

1.  Robert  Yakubec at all pertinent times was acting in  the scope of his employment
    as a DEA Diversion  Investigator.(DI)  (Ex.  1-Yakubec Deposition of January 4,
    2005, pp. 4-5).

2.  DI Yakubec began work with the DEA in  in  late 1989 or early 1990. Prior to that
    he was a United States Treasury agent, the predecessor to DEA, from 1962-1971,
    when he went into private industry until beginning  work with DEA in 1989.  He
    was trained at Quantico as a Diversion Investigator, worked as such in Miami,
    then in 1997  transferred to the Orlando area which included the Gainesville area.
    (Ex.  1- p.4,  ll 21-25; p.  5, ll 1-18.

3.  DI Yakubec's job duties included the investigation of  medical providers for the
    illegal or improper distribution of controlled substances.  (Ex.  1-p. 6, ll 5-12; p.
    8, ll 7-18) As a DI , under the applicable federal regulations. DI Yakubec did not
    have the power to arrest a suspect nor to carry a weapon. (Ex.  1, p.  42, ll.  11-18;
    p.  43, lll.  7-18 ).  His powers and authority were  given to him and limited by  28
    C.F.R.  § 0.104.  Appendix to Subpart R, Sec.  3( b), to wit:

    **Sec. 3. Enforcement officers.**

    **(b)** All DEA **Diversion Investigators** (series 1801 under Office of Personnel
    Management regulations) are authorized to administer oaths and serve subpoenas
    under 21 U.S.C. 875 and 876; to conduct administrative inspections and execute
    administrative inspection warrants under 21 U.S.C. 878(2) and 880; to seize
    property incident to compliance and registration inspections and investigations
    under 21 U.S.C. 881; and to seize or place controlled substances under seal
    pursuant to 21 U.S.C. 824.

4.   In contrast DEA criminal investigators " and special agents of the FBI are

authorized to exercise all of the powers of enforcement personnel granted by 21

U.S.C. 876, 878, and 879; to serve subpoenas, administer oaths, examine

witnesses, and receive evidence under 21 U.S.C. 875; to execute administrative

inspection warrants under 21 U.S.C. 880; and to seize property under 21 U.S.C.

881 and 21 CFR 1316.71 et seq." 28 C.F.R. § 0.104. Appendix to Subpart R,

Sec. 3(a ).

5       The investigation of Dr. Nguyen for the possible illegal dispensing of controlled

        substances, and the acceptance of the surrender of his DEA certificate were

        matters within the discretion of DI Yakubec as a DEA Diversion in Investigator

6.      The investigation of Dr. Nguyen came about as a result of an investigation of

        doctors improperly dispensing prescription drugs (controlled substances) by an

        informal joint task force of DEA and several counties and cities in Central

        Florida, including Alachua, Gilchrist, and Levy counties. (Ex. 1 p. 6, ll 5-17,

        p. 8, ll 7-18)

7.      DI Yakubec first become involved in the case regarding Dr. Nguyen when he was

        introduced to the confidential informant BC by Deputy Kenneth (Kenny) Carlisle

        of the Gilchrist County Sheriff's Office. (Ex. 1, p. 5, ll 19-25; p. 6, l 6; p. 30,

        ll 10-12). DEA was looking for informants and Deputy Carlisle said BC was a

        good one, (Ex. 1, p.6, ll 17-21). DI Yakubec had never used the CI as a source

        before. (Ex. 1, p 6., l. 22-25; p. 7, ll. 1).

8.      DEA decided to use the CI after meeting with her and conducting an investigation

of her background.  (Ex.  1, p. 8,  ll 18-25; p.  9, ll 1-5).  The CI informed DI

Yakubec and the state officers that she had obtained  prescription drugs, Loretab

and Valium,  from Dr. Nguyen on numerous occasions and that she was able to

obtain them without getting a proper physical  examination or any exam at all.

(Ex.  1, p.  9, ll 6-17; p.  13, ll.  20-25).

9.      The confidential informant involved in the case became a DEA informant shortly

before the investigation of  Dr.  Nguyen .The background of the CI was

investigated by DEA, she had no criminal arrest record, only some traffic

infractions.  (Ex.  1, p.  34, ll.  17-25)

10.     Prior to Dr.  Nguyen 's arrest DEA was never told by the CI nor did DEA have

any knowledge about any preexisting medical conditions, that she had been in a

previous car accident and had been treated by Dr.  Nguyen for at least four years.

The did not learn of these matters until the day of Dr. Nguyen's arrest, when a

copy of the CI's  medical records were obtained from Dr.  Nguyen by means of a

subpoena by an agent of the  Florida Agency For Health Care Administration

(ACHA), not by DI Yakubec.  (Ex.  1-p.  12, ll.  7-12; p.  9, ll1-5; p.  11, ll. 11-20;

p.  12., ll.  3-12; p.  13,  ll 18-25; p.  25, ll.  16-25).


11.     DI Yakubec had no knowledge prior to Dr.  Nguyen 's arrest that the CI had gone

to  North Florida Regional Hospital nor that she had been prescribed  Loretab for

her back pain and referred back to Dr.  Nguyen .  (Ex.  1-, p.  25, l.  25; p.  26, ll.

1-11).

12.     DEA had never obtained Ms. Curtis's medical records, including those
        concerning the undercover visits of the CI,  prior to Dr.  Nguyen's arrest nor was
        it routine practice to do so.     (Ex.  1, p.  16, ll  17-23, p.  17, ll1-21, p.  18, ll 1-4)

13.     It was DI Yakubec 's opinion that on 4/11/1999  Dr. Nguyen had prescribed
        controlled substances for the CI  "without a proper medical exam." (Ex.  1.  p.
        20, ll.  21-25,  p.  25 lll. 19-25, p.  24, ll.  1-3.)

14.     The final decision whether Dr. Nguyen was violating state law concerning the
        issuance of precriptions for narcotic drugs was the state attorney's office.  (Ex.  1-
        .p.31, ll 3-10, 20-24)

15.     On March 23, 2000, DT Yakubec did not arrest Plaintiff nor had he did he swear
        to any affidavit or declaration presented to the Court in order to obtain an arrest
        warrant.  ( Plaintiff's Ex.  1 to Summary Judgment Motion, -p. 1; Defendant 's
        Ex.  1, p.  42, ll.  7-25; p.  44,  l. 1) He did not seize him.  He did not search him.
        Th informant's medical records kept by Dr.  Nguyen were obtained by subpoena
        by William Schauer of ACHA, not by DI Yakubec.  (Ex.  1-p.  12, ll.  7-12)

16.     DI Yakubec accepted surrender of Dr.  Nguyen's DEA  certificate which was
        voluntarily given by Dr.  Nguyen. (Plaintiff's Statement of Uncontested Material
        Facts; Def's  Exs.  3, 4 5).  After the charges were dropped against Dr.  Nguyen,
        his DEA certificate was reinstated on 8-28-03.  (Def's  Ex.  6)

17.     Dr.  Nguyen was arrested by Gilchrist County Sheriff's Office Deputy Kenneth
        H. Carlisle based on an arrest warrant based upon  the probable cause contained
        in the Affidavit of Kenneth H. Carlisle of March 22, 2003, presented to the Court

of the State of Florida, Gilchrist County, Eighth Judicial Circuit, which issued the

arrest warrant.  (Ex.  1 to Plaintiff 's Motion For Partial Summary Judgment-

Affidavit in Support of Arrest; Defendant 's Ex.  3-Arrest Warrant)

18.     At no time did DI Yakubec know of or have reason to believe that there were any

inaccuracies or omissions  in the affidavit of  Kenneth Carlisle used to obtain the

arrest warrant of  Dr.  Nguyen, nor did he assist in the presentation of any such.

19.     At all times  prior to the arrest of Dr.  Nguyen investigating officers believed that

the CI was a reliable and truthful informant.  (Ex.  3-Deposition of Kenneth H.

Carlisle, p.  37, ll.  5-11).

Submitted this 5th day of July, 2005

> Respectfully submitted,
> GREGORY R. MILLER
> United States Attorney
>
> /S/ROY F. BLONDEAU, JR.
> ROY F. BLONDEAU, JR.
> Assistant U. S. Attorney
> Florida Bar 210013
> 111 North Adams Street, 4th Floor
> Tallahassee, Florida 32301
> (850)942-8430

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by

ECF-Mail and/or U.S. Mail this 5th day of July, 2005, to the following:

Robert A. Rush, Esq.
726 N.E. First Street
Gainesville, Florida 32601
Attorney for Plaintiffs

John W. Jolly, Jr., Esq.
Jolly, Peterson & Cherr, P.A.
Post Office Box 37400
Tallahassee, Florida 32315
Attorney for Kenneth Carlisle
and David Turner

/S/ROY F. BLONDEAU, JR.
ROY F. BLONDEAU, JR.
Assistant United States Attorney