**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

ANDREW NGUYEN, M.D., an individual,                    CASE NO.: 1:04cv26MMP
ANDREW NGUYEN, M.D., P.A.,
A Florida professional association, and
LINH NGUYEN,

      Plaintiffs,

vs.

UNITED STATES OF AMERICA, FLORIDA
DAVID P. TURNER, individually and in his
official capacity as Sheriff of Gilchrist County, Florida,
and KENNETH H. CARLISLE, individually,

      Defendants.                                                              /

**THIRD AMENDED COMPLAINT**

      Plaintiffs, ANDREW NGUYEN, M.D., ("DR. NGUYEN"),  ANDREW

NGUYEN, M.D., P.A., LINH NGUYEN ("LINH"), (referred to jointly as "Plaintiffs");

by and through undersigned counsel hereby sue Defendants, UNITED STATES OF

AMERICA ("UNITED STATES"), DAVID P. TURNER, individually and in his official

capacity as Sheriff of Gilchrist County, Florida, and KENNETH CARLISLE,

individually, and allege:

1

## CAUSE OF ACTION

1.      This is an action brought pursuant to 42 U.S.C. §1983 and §1988, for violation of the IV and XIV Amendments of the United States Constitution, §768.28, Florida Statutes, and for violation of the State of Florida Constitution, Article I, §§ 2, 9 and 12.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action under 42 U.S.C. §1983 and its pendent jurisdiction for state law claims.

3.      This is an action for damages that exceed $75,000.00 exclusive of interest, costs and attorneys' fees.

4.      All actions took place within the Northern District of Florida and venue is proper within the Northern District of Florida.

## PARTIES

5.      At all times relevant to this Complaint, Plaintiff ANDREW NGUYEN, M.D., P.A. ("P.A."), was a Florida Professional Association through which DR. NGUYEN practiced medicine in Gilchrist County, Florida, and Alachua County, Florida.

6.      Plaintiffs DR. NGUYEN and LINH are Husband and Wife and owners of the P.A.

7.      Defendant UNITED STATES is being sued as enumerated below due to the

2

actions and omissions of the Drug Enforcement Administration ("DEA") and due to the actions of its employee Robert B. Yakubec ("DEA Agent Yakubec") for whom the United States Attorney's Office has filed in this case a certification stating that DEA Agent Yakubec was acting in the scope of his employment at the time of the incident giving rise to this action.

8.      At all times material, DEA Agent Yakubec was acting as a law enforcement officer of the United States.

9.      Defendant Gilchrist County Sheriff's Deputy KENNETH CARLISLE ("Deputy CARLISLE") is sued in his individual capacity.

10.     Defendant Gilchrist County Sheriff, DAVID P. TURNER, is sued in his official capacity for the actions of its employees that fall under §768.28, Florida Statutes.

11.     Defendant Gilchrist County Sheriff, DAVID P. TURNER, ("Sheriff TURNER") is also being sued in his individual and official capacities as enumerated herein.

<u>GENERAL ALLEGATIONS</u>

12.     On or about March 23, 2000, Deputy CARLISLE and DEA Agent Yakubec executed an arrest warrant charging DR. NGUYEN with six felony counts of Delivery of a Controlled Substance in violation of §893.13(1)(a), Florida Statutes.

13.     DR. NGUYEN was taken to the Gilchrist County Jail where he was

3

imprisoned until he paid a bail in the amount of $60,000.00.

14.     On or about March 23, 2000, DEA Agent Yakubec took DR. NGUYEN's Drug Enforcement Administration Certificate ("DEA Certificate"), which permits a doctor to prescribe controlled substances, from DR. NGUYEN's office.  The seizure of the DEA Certificate was without a warrant or other lawful authority.

15.     The arrest of DR. NGUYEN was based upon an affidavit containing numerous false allegations including, among other things, that DR. NGUYEN was prescribing controlled substances that were not medically necessary, that DR. NGUYEN never asked or requested the patient to take an examination, and that drugs were not prescribed by DR. NGUYEN in good faith in the course of his professional practice.

16.     The UNITED STATES, by and through the actions of DEA Agent Yakubec, knew or should have known, that the information used as a basis for the arrest of DR. NGUYEN was false.

17.     Deputy CARLISLE knew or should have known, that the information used as a basis for the arrest of DR. NGUYEN was false.

18.     Deputy CARLISLE and DEA Agent Yakubec, each acting under color of law, jointly and severally, combined, confederated and conspired in taking the following actions:

        a)     meeting on at least three occasions and discussing DR. NGUYEN with

4

a confidential source;

b)   reviewing affidavits from the confidential source which included information that DR. NGUYEN had, in fact, performed a medical examination and had otherwise properly prescribed the medicine, all of which information was ignored by Deputy CARLISLE and DEA Agent Yakubec;

c)   failing to listen to their own tape recordings of the confidential source's office visits with DR. NGUYEN, each of which documents that a physical examination was performed on the confidential source; and

d)   presenting the Circuit Court Judge with a false affidavit in order to obtain an arrest warrant for DR. NGUYEN.

19.    Notwithstanding the obvious evidence that DR. NGUYEN was conducting medically appropriate examinations and dispensing medically appropriate prescriptions, Deputy CARLISLE and DEA Agent Yakubec created a false affidavit which falsely alleged that DR. NGUYEN was prescribing controlled substances that were not medically necessary in violation of state law.

20.    No probable cause existed for the charges for which DR. NGUYEN was arrested.  The entire basis for the arrest of DR. NGUYEN centered upon information

supplied by a confidential source  that Deputy CARLISLE and the UNITED STATES, by and through the actions of DEA Agent Yakubec, sent into DR. NGUYEN's office to request a prescription for Valium, Diazepam and/or Lortab from DR. NGUYEN.

21.     Valium, Diazepam and/or Lortab are controlled substances pursuant to §893, Florida Statutes.

22.     The affidavit used as the basis for his arrest failed to include the fact that the confidential source, one Brenda Curtis ("Confidential Source" or "CURTIS"), had been a patient of DR. NGUYEN since August 19, 1997.

23.     The affidavit falsely claims that DR. NGUYEN and/or his staff and assistants failed to conduct any physical examination, and Deputy CARLISLE and DEA Agent Yakubec had knowledge that any such statement was false.

24.     During each of the three orchestrated visits of the Confidential Source to DR. NGUYEN's office, DR. NGUYEN and/or his staff conducted the requisite physical examination and, at all time followed the accepted medical standards in the evaluation and treatment of the confidential source.

25.     Each and every prescription issued by DR. NGUYEN was medically necessary and followed the medical standards for the prescribing of these controlled substances to Curtis.

26.     As a result of the arrest, DR. NGUYEN's DEA CERTIFICATE, which allowed him to prescribe controlled substances, was revoked, thereby preventing him from providing reasonable and necessary medical services to his patients.

27.     As a direct result of DR. NGUYEN's arrest, major medical insurance companies including, but not limited to, Blue Cross Blue Shield and Humana, revoked, canceled or otherwise terminated the right of any of their policyholders from being treated by DR. NGUYEN and, thereafter, denied any payments to DR. NGUYEN.

28.     The Gilchrist County Sheriff failed to properly train, supervise, instruct or oversee the actions of Deputy CARLISLE and, but for said failure, DR. NGUYEN would not have been arrested and sustained damages.

29.     The Gilchrist County Sheriff failed to conduct any competent investigation regarding this false arrest of DR. NGUYEN  including, but not limited to, taking no action to discipline his officers and deputies or order them not to repeat such instances nor was there any corrective action or training offered thus approving such conduct.

30.     The Gilchrist County Sheriff has a practice and custom of deficiently training deputy sheriffs such that the custom may be deemed the official policy of the Gilchrist County Sheriff's Office and the failure to instruct, train and properly supervise Deputy CARLISLE occurred and continued for long enough such that the Sheriff's failure to act and

7

correct the procedure caused or substantially contributed to DR. NGUYEN's arrest.

31.    The Gilchrist County Sheriff, directly or indirectly, under color of law, approved or ratified the unlawful and deliberate actions of Deputy CARLISLE and possibly others.

32.    The UNITED STATES, by and through the DEA, failed to properly train, supervise, instruct or oversee the actions of its employee DEA Agent Yakubec and but for said failure, DR. NGUYEN would not have been arrested and sustained damages.

33.    The UNITED STATES, by and through the DEA, failed to conduct any competent investigation regarding the actions of DEA Agent Yakubec in regard to the false arrest of DR. NGUYEN.  The UNITED STATES, by and through the DEA, failed to take any action to discipline its officers and  agents and also failed to direct its officers and agents not to repeat unlawful arrests such as that of DR. NGUYEN.  By failing to take any corrective actions, the UNITED STATES, by and through the DEA, approved of the conduct of its officers and agents in making the unlawful arrest of DR. NGUYEN.

34.    The UNITED STATES, by and through the DEA, has a practice and custom of deficiently training its agents such that the custom may be deemed the official policy of the UNITED STATES and the failure to instruct, train and properly supervise its employee, DEA Agent Yakubec, occurred and continued for long enough such that the UNITED

STATES' failure to act and correct the procedure caused, or substantially contributed, to DR. NGUYEN's arrest.

35.     The UNITED STATES, by and through the DEA, directly or indirectly, under color of law, approved or ratified the unlawful and deliberate actions of its employee DEA Agent Yakubec and possibly others.

36.     Proper and timely notice of this claim, as required, has been made to all defendants, and all conditions precedent for this action have been met.

COUNT I

STATE LAW CLAIM FOR FALSE ARREST<br>AND FALSE IMPRISONMENT AGAINST THE<br><u>GILCHRIST COUNTY SHERIFF AND THE UNITED STATES</u>

37.     By this reference, Plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 36, as though they were fully set forth herein.

38.     DR. NGUYEN was arrested without probable cause or arguable probable cause as a result of the actions of the UNITED STATES, by and through the actions of DEA Agent Yakubec, and the Gilchrist County Sheriff, by and through the actions of Deputy CARLISLE, who jointly created and presented a false affidavit to the Circuit Court in order to have an   arrest warrant issued for DR. NGUYEN.

39.     The arrest of DR. NGUYEN was at the hands of the DEA Agent Yakubec and

9

Deputy CARLISLE, who among other things:

   a)   conspired, confederated, and contributed to DR. NGUYEN's arrest by
        setting up and orchestrating the confidential source's activities;

   b)   failed to recognize the lack of probable cause;

   c)   failed to properly evaluate the evidence that they had obtained; and

   d)   failed to present the true and relevant facts to the judge who issued the
        arrest warrant.

40.   The arrest of DR. NGUYEN was without probable cause, or even arguable probable cause, because  the evidence in the possession of Deputy CARLISLE and DEA Agent Yakubec showed that the allegations in the affidavit used to secure an arrest warrant were blatantly false.

41.   As a direct and proximate result of the actions of the UNITED STATES, by and through DEA Agent Yakubec and the Gilchrist County Sheriff, by and through Deputy CARLISLE, DR. NGUYEN was falsely arrested and suffered pain and suffering, lost wages and earnings, mental anguish, humiliation, injury to professional reputation and other lawful damages, then and continuing into the future.

42.   As a result of Deputy CARLISLE and DEA Agent Yakubec's actions, DR. NGUYEN was handcuffed and imprisoned in the Gilchrist County Jail on or about

10

March 23, 2000.

43.     As a direct and proximate result of the actions of the UNITED STATES by and through DEA Agent Yakubec  and the Gilchrist County Sheriff  by and through Deputy CARLISLE,  DR. NGUYEN was falsely arrested and suffered pain and suffering, lost wages and earnings, mental anguish, humiliation, injury to professional reputation and other lawful damages, then and continuing into the future.

44.     As a direct and proximate result of the actions of the UNITED STATES, by and through DEA Agent Yakubec and the Gilchrist County Sheriff, by and through Deputy CARLISLE, the P.A. lost income, revenues, clients, and injury to its professional reputation and other lawful damages then and continuing into the future.

WHEREFORE the Plaintiffs respectfully requests judgment for compensatory damages,  a jury trial, and for such other and further relief as the Court deems proper.

COUNT II

VIOLATION OF CIVIL RIGHTS
BY THE GILCHRIST COUNTY SHERIFF

45.     By this reference, Plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 36, as though fully set forth herein.

46.     At all times relevant to this Complaint, Deputy CARLISLE was acting under the direction and control of the Gilchrist County Sheriff TURNER and was acting pursuant

11

to the official policies, practice, and customs of the Gilchrist County Sheriff.

47.     Acting under color of the authority of law and pursuant to the official policies, practice and customs, Gilchrist County Sheriff TURNER, knowingly or recklessly failed to instruct, supervise, control and/or discipline, on a continuing basis, Deputy CARLISLE in his duty to refrain from arresting persons without probable cause and documenting true and accurate facts in affidavits used to secure arrest warrants.  These failures of Gilchrist County Sheriff TURNER caused or substantially contributed to the damages of the Plaintiffs.

48.     Gilchrist County Sheriff TURNER, directly or indirectly, under the color of law, approved or ratified the unlawful, deliberate, malicious and/or reckless and wanton conduct of Deputy CARLISLE by failing to conduct any competent investigation, take any corrective action, provide any reprimands or in any way provide subsequent supervision and remedial measures regarding DR. NGUYEN's arrest such that the only conclusion that can be drawn from these facts is that Sheriff TURNER condoned Deputy CARLISLE's actions.

49.     As a direct and proximate result of the unlawful and malicious actions of Gilchrist County Sheriff TURNER, DR. NGUYEN suffered injury, was deprived of his right to be secure in his person and property against unreasonable seizures of his person and property in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

50.     As a direct and proximate result of the actions of the Gilchrist County Sheriff TURNER, DR. NGUYEN was falsely arrested and suffered pain and suffering, lost wages and earnings, mental anguish, humiliation, loss of professional reputation and other lawful damages, then and continuing into the future.

51.     As a direct and proximate result of the actions of Gilchrist County Sheriff TURNER, the P.A. lost income, revenues, clients, and injury to its professional reputation and other lawful damages then and continuing into the future.

WHEREFORE, Plaintiffs respectfully requests judgment for compensatory damages, attorneys' fees and costs, a jury trial, and for such other and further relief as the Court deems proper.

## COUNT III

## VIOLATION OF CIVIL RIGHTS BY THE UNITED STATES

52.     By this reference, Plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 36, as though they were fully set forth herein.

53.     At all times relevant to this Complaint, DEA Agent Yakubec was an agent acting under the direction and control of the UNITED STATES as a DEA Agent, and was acting pursuant to its official policies, practice, and customs.

54.     At all times relevant, DEA Agent Yakubec was acting under color of the

13

authority of law and pursuant to the official policies, practice and customs of the DEA.

55.     The UNITED STATES, by and through the acts and omissions of DEA Agent Yakubec, caused the false arrest of and seizure of property from DR. NGUYEN in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

56.     Acting under color of the authority of law and pursuant to the official policies, practice and customs, the UNITED STATES , by and through the DEA, intentionally, knowingly, or recklessly failed to instruct, supervise, control and/or discipline, on a continuing basis, its employee DEA Agent Yakubec in his duty to refrain from arresting persons without probable cause and to document true and accurate facts in affidavits used to secure arrest warrants.  These failures caused or substantially contributed to the violation of DR. NGUYEN's Fourth and Fourteenth Amendment rights and to the damages sustained by the Plaintiffs.

57.     The UNITED STATES, by and through the DEA, directly or indirectly, under the color of law, approved or ratified the unlawful, deliberate, malicious and/or reckless and wanton conduct of its employee, DEA Agent Yakubec, by failing to conduct any competent investigation, take any corrective action, provide any reprimands, or in any way provide subsequent supervision and remedial measures such that the only conclusion that can be drawn from the facts is that the DEA condoned said actions.

58.     As a direct and proximate result of the unlawful and malicious actions of the UNITED STATES, by and through the DEA and DEA Agent Yakubec, DR. NGUYEN suffered injury, was deprived of his right to be secure in his person and property against unreasonable seizures of his person and property in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

59.     As a direct and proximate result of the actions of the UNITED STATES, by the DEA and DEA Agent Yakubec, DR. NGUYEN was falsely arrested and suffered pain and suffering, lost wages and earnings, mental anguish, humiliation, loss of professional reputation and other lawful damages, then and continuing into the future.

60.     As a direct and proximate result of the actions of the UNITED STATES, by and through the DEA and DEA Agent Yakubec, the P.A. lost income, revenues, clients, and injury to its professional reputation and other lawful damages then and continuing into the future.

WHEREFORE, Plaintiffs respectfully requests judgment for compensatory damages, attorneys' fees and costs, a jury trial, and for such other and further relief as the Court deems proper.

COUNT IV

15

## VIOLATION OF CIVIL RIGHTS BY CARLISLE

61.    By this reference, Plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 36, as though they were fully set forth herein.

62.    At all relevant times, Deputy CARLISLE was acting under color of law and his authority as an agent for the Gilchrist County Sheriff.

63.    As a direct and proximate result of the unlawful and malicious actions of Deputy CARLISLE, DR. NGUYEN suffered injury, was deprived of his right to be secure in his person and property against unreasonable seizures of his person in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

64.    As a direct and proximate result of Deputy CARLISLE's action, DR. NGUYEN was falsely arrested and imprisoned, suffered pain and suffering, lost wages and earnings, mental anguish, humiliation, loss of professional reputation and other lawful damages, then and continuing into the future.

65.    As a direct and proximate result of the actions of Deputy CARLISLE, the P.A. lost income, revenues, clients, and injury to its professional reputation and other lawful damages then and continuing into the future.

WHEREFORE, Plaintiffs respectfully request judgment for compensatory damages, attorneys' fees and costs, a trial by jury, and for such other and further relief as the Court

16

deems proper.

## COUNT V

### CONSPIRACY TO VIOLATE CIVIL
### RIGHTS BY UNITED STATES AND CARLISLE

66.    By this reference, Plaintiffs incorporate each and every allegation and

averment set forth in paragraphs 1 through 36 as though they were fully set forth herein.

67.    The Defendants, UNITED STATES, by and through the actions of DEA

Agent Yakubec, and Deputy CARLISLE, jointly and severally, combined, confederated and

conspired, taking actions which resulted in the violation of DR. NGUYEN's civil rights,

including:

a)    meeting on at least three occasions wherein they discussed DR.
NGUYEN with the confidential source;

b)    reviewing affidavits from the confidential source which included
information that DR. NGUYEN had, in fact, performed a medical
examination and had otherwise properly prescribed the medicine, all of
which information was ignored by the UNITED STATES through the
actions of DEA Agent Yakubec and Deputy CARLISLE;

c)    failing to listen to their own tape recordings of the confidential source's
visits with DR. NGUYEN, each of which document that a physical

17

examination was performed on Curtis; and

d)      failing to present the true and relevant facts to the Judge who issued the arrest warrant.

68.      Notwithstanding the obvious evidence that DR. NGUYEN was conducting medically appropriate examinations and dispensing medically appropriate prescriptions, Deputy CARLISLE and DEA Agent Yakubec created false affidavits which falsely alleged that DR. NGUYEN was prescribing controlled substances that were not medically necessary in violation of state law.

69.      As a direct and proximate result of the unlawful and malicious actions of the Defendant, the UNITED STATES, by and through the actions of DEA Agent Yakubec, and Deputy CARLISLE, DR. NGUYEN suffered injury, was deprived of his right to be secure in his person and property against unreasonable seizures of his person and property in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

70.      As a direct and proximate result, DR. NGUYEN was falsely arrested and imprisoned, suffered pain and suffering, lost wages and earnings, mental anguish, humiliation, loss of professional reputation and other lawful damages, then and continuing into the future.

71.      As a direct and proximate result of the actions of the UNITED STATES, by

18

and through DEA Agent Yakubec and Deputy CARLISLE, the P.A. lost income, revenues, clients, and injury to its professional reputation and other lawful damages then and continuing into the future.

WHEREFORE, Plaintiffs respectfully request judgment for compensatory damages, attorneys' fees and costs, a jury trial and for such other and further relief as the Court deems proper.

## COUNT VI

### MALICIOUS PROSECUTION AGAINST UNITED STATES, THE GILCHRIST COUNTY SHERIFF, AND DEPUTY CARLISLE

72. Plaintiffs incorporate by reference and restate the allegations of paragraphs 1 through 36 as set forth fully herein.

73. Defendants, UNITED STATES, by and through the actions of DEA Agent Yakubec and the Gilchrist County Sheriff by and through the actions of Deputy CARLISLE, arrested DR. NGUYEN on six (6) counts of "Delivery of a Controlled Substance."

74. The charges made against DR. NGUYEN were, in fact, false.

75. UNITED STATES, through the actions of DEA Agent Yakubec and Gilchrist County Sheriff, by and through the actions of Deputy CARLISLE, caused an arrest warrant to be issued against DR. NGUYEN. The affidavit used to secure the arrest warrant falsely stated that DR. NGUYEN prescribed medication to CURTIS "without any type of

19

physical examination or medical need. The confidential source entered the office and wanted these controlled substances and was never asked or request [sic] to taken an evaluation."

76.    In each and every instance relevant to this investigation of DR. NGUYEN's practices, a physical examination was conducted on CURTIS.

77.    At all times relevant to this action, CURTIS was under the care of a physician for physical injuries.

78.    Defendants, UNITED STATES, by and through the actions of DEA Agent Yakubec, Deputy CARLISLE, and the Gilchrist County Sheriff by and through the actions of Deputy CARLISLE willfully, wantonly, oppressively and maliciously caused DR. NGUYEN to be prosecuted.

79.    On or about May 17, 2000, the Office of the State Attorney filed a *nolle prosequi*, dismissing all counts against DR. NGUYEN because there was insufficient evidence to prosecute DR. NGUYEN.

80.    As a direct and proximate result of the actions of the UNITED STATES, through the actions of DEA Agent Yakubec and Gilchrist County Sheriff, by and through the actions of Deputy CARLISLE, caused an arrest warrant to be issued against DR. NGUYEN. The affidavit used to secure the arrest warrant falsely stated that DR. NGUYEN prescribed medication to CURTIS "without any type of physical examination or medical need. The

20

confidential source entered the office and wanted these controlled substances and was never asked or request [sic] to taken an evaluation."

81.    As a direct and proximate result of the actions of the UNITED STATES, by and through DEA Agent Yakubec and the Gilchrist County Sheriff, by and through Deputy CARLISLE, the P.A. lost income, revenues, clients, and injury to its professional reputation and other lawful damages then and continuing into the future.

WHEREFORE, Plaintiffs respectfully request judgment for compensatory damages, attorneys' fees and costs, a jury trial and for such other and further relief as the Court deems proper.

Respectfully submitted,


_____/s/   Robert A. Rush_____
Robert A. Rush
Florida Bar #559512
726 N. E. First Street
Gainesville, Florida 32601
(352) 373-7566   (Fax) 376-7760
Robert@rushandglassman.com
Attorney for Plaintiffs


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Third Amended Complaint was electronically filed and served, this 15th day of September, 2005, on the following counsel:

21

Roy F. Blondeau, Jr.
Assistant U.S. Attorney
111 N. Adams Street, 4th Fl.
Tallahassee, FL 32301-1841
Attorney for DEA and Robert Yakubec

Mitchell Feldman, Esq.
Silver, Levy & Feldman, P.A.
1408 N. Westshore Blvd., Ste. 806
Tampa, FL 33607
Attorney for FAHA


John W. Jolly, Jr., Esq.
Jolly, Peterson & Cherr, P.A.
Post Office Box 37400
Tallahassee, FL 32315
Attorney for Kenneth Carlisle
and David Turner

Robert B. Buchanan, Esq.
Renee E. Thompson, Esq.
Siboni, Hamer & Buchanan, P.A.
307 N.W. Third Street
Ocala, FL 34475
Attorney for William Schauer


        */s/   Robert A. Rush*