IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ANDREW NGUYEN MD PA,
ANDREW NGUYEN,
LINH NGUYEN,

    Plaintiffs,

v.                                              **CASE NO. 1:04-cv-00026-MP-AK**

Estate of DEPUTY KENNETH H CARLISLE,
SHERIFF DAVID P TURNER,
and UNITED STATES,

    Defendants.

_____/

## O R D E R

This matter is before the Court on the following dispositive motions:

•     Defendant United States' Motion To Dismiss for Lack of Jurisdiction, Doc. 131, to which the Plaintiffs responded (Doc. 135);

•     Plaintiffs' Motion for Partial Summary Judgment against the United States, Doc. 139, to which the United States responded (Doc. 147); and

•     Plaintiffs' Motion for Partial Summary Judgment against David P. Turner ("Sheriff Turner") and the Estate of Kenneth H. Carlisle ("Carlisle"), to which these defendants responded (doc. 142).

For the following reasons, the United States' Motion to Dismiss is granted and Plaintiffs' motions for summary judgment[1] are both denied.

In March 2000, plaintiff Dr. Andrews Nguyen was arrested by Deputy Sheriff Kenneth Carlisle of the Gilchrist County Sheriff's Office under a state arrest warrant charging him with

---

[1] Defendants Sheriff Turner and Carlisle have not filed a motion for summary judgment, but stated in their response to Plaintiffs' motion that they "will so move at the conclusion of the Plaintiffs case." (Doc. 142).

six felony counts of Delivery of a Controlled Substance, in violation of § 893.13(1)(a), Florida Statutes. (Doc. 121).[2] The arrest was the result of a three month investigation of Dr. Nguyen led by DEA Agent Robert Yakubec. Despite the fact that Agent Yakubec led the investigation, it was Deputy Carlisle who obtained the warrant and signed the Arrest Affidavit. In the Arrest Affidavit, Deputy Carlisle stated:

> Working in coordination with Drug Administration (DEA) began an investigation into allegations made from a confidential source that Dr. Andrew Nguyen was issuing prescriptions for controlled substances without a physical examination in Gilchrist County. Investigators began office visits on or about June 30, 1999 and continued office visits through on or about August 27, 1999. During this time frame by use of confidential source, these investigators obtained written prescriptions for Lortab and Valium (controlled substances) from Dr. Nguyen. These prescriptions were written to the confidential source for these controlled substances and were issues without any type of physical examination or medical need. The confidential source entered the office and wanted these controlled substances and was never asked or requested to take an examination.
>
> (Exh. 1 to doc. 137).

Deputy Carlisle later stated under oath that he relied on information from the DEA in writing the narrative portion of the Arrest Affidavit. Specifically, he averred:

> Q. Let me show you another report that is dated 3-16-00. If you would turn to the second page, is that your written narrative?
>
> A. Yes sir.
>
> Q. And again that narrative says on the fifth line again that the prescriptions were received without the patient receiving any type of physical examination correct?
>
> A. That's what it states. Yes sir.
>
> Q. Where did you get that information from?

---

[2] Also, at the time of Dr. Nguyen's arrest, his DEA Certificate allowing him to prescribe controlled substances was seized by DEA Agent Yakubec. (Doc. 148).

A. From the Drug Administration, DEA.

Q. Would that be from

A. Mr. Bob (DEA investigator Robert Yakubec)

Q. Did you make any attempt to confirm that statement independently or did you rely totally upon the statement of Agent Yakubec?

A. Totally on DEA.

(Ex 12 - Deposition of Deputy Kenneth Carlisle, pg 18, lines 8-24).

Despite the claim in the Arrest Affidavit that the drugs were issued "without any type of physical examination or medical need," the Plaintiffs have produced evidence of Dr. Nguyen's contemporaneously produced medical records detailing physical examinations at every visit (see Exhibits in attachment 5 to doc. 141). Also, attachment 5 to doc. 141 contains records of Agent Yakubec's debriefings of the confidential source, in which she told him about various aspects of physical examinations, such as having her vital signs taken, her heart listened to, and questions about whether she was or planned to become pregnant. Moreover, in the medical records of Dr. Nguyen, he lists the medical need for the two drugs he prescribed, Lortab and Valium. For example, on page 3 of attach. 5 of doc. 141, (record of the June 30, 1999, visit) he lists "nervousness", "insomnia" and "pain" for "months" as the reason for the drugs. The record also shows her blood pressure, pulse rate, temperature and weight. The records of the other visits also contain such specifics. Eventually, in May, 2000, the State Attorney's Office for the Eighth Judicial Circuit filed a *nolle prosequi* of the charges against Dr. Nguyen, and Dr. Nguyen was not charged in federal court.

In February 2004, Plaintiffs brought an action pursuant to 42 U.S.C. §1983 and §1988, for violation of the U.S. Const. Amend. IV and XIV, §768.28, Florida Statutes,

and for violation of Florida Const. Art. I, §§ 2, 9 and 12 in this Court. (Doc. 121). Plaintiffs' allegations are state law violations of false imprisonment and false arrest, violations of Plaintiffs' civil rights, and malicious prosecution. Plaintiffs originally named multiple defendants, of whom only The United States, Sheriff Turner, and the Estate of Deputy Carlisle remain as parties to the suit. Deputy Carlisle died in 2005, and his estate has been substituted as the proper party per order of this Court. The United States' involvement in the case began when it was substituted for DEA Agent Yakubec, who was deemed a federal employee acting within the scope of his duties in a prior order of the Court.

In its motion to dismiss, the United States argues that it is protected by sovereign immunity for the conduct of DEA Agent Yakubec because his conduct is excepted in at least one of two ways from the waiver of sovereign immunity in the Federal Tort Claims Act, 28 U.S.C. §1346(b), 2671-2680, ("FTCA"). The Plaintiffs respond that Agent Yakubec's conduct in this case is not excepted from the FTCA waiver of immunity. Thus, the United States should be amenable to suit based on his conduct, Plaintiffs argue.

First, the United States claims that section 1346(b) of the FTCA applies to Agent Yakubec and excepts his conduct from the FTCA waiver of immunity because he is not a "law enforcement officer." This issue is confounded by the fact that it involves a "Proviso" that limits an "Exception" to the "Waiver" of sovereign immunity under the FTCA. Here is what that means. Under the principle of sovereign immunity, the United States can only be sued with its consent, in instances where it has clearly waived sovereign immunity. *See* <u>Dalehite v. United States</u>, 346 U.S. 15, 30 (1953). The FTCA is such a "waiver" of the United States' sovereign immunity under certain circumstances. The FTCA waives sovereign immunity for actions

against the United States resulting from injuries caused by the negligent acts of governmental employees while acting in the scope of their employment. 28 U.S.C. § 1346(b)(1). The United States can be held liable "in the same manner and to the same extent as a private individual under like circumstances." Id. § 2674

The FTCA, however, contains various "exceptions" from this waiver of sovereign immunity. In other words, if conduct or individuals falls within a certain exception, the United States has not waived sovereign immunity for that conduct or individual, and no suit may be brought based on the conduct or individual. The specific exception in the FTCA at issue in the instant case provides:

> The provisions of this chapter and section 1346(b) of this title shall not apply to--
> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights...

28 U.S.C. § 2680(h) (emphasis added). In other words, this section excepts certain intentional torts from the waiver of sovereign immunity; meaning the United States cannot be sued for these particular intentional torts.

However, that "exception" contains a "proviso" which limits the exception if "investigative or law enforcement officers" of the United States are involved. Section 2680(h) continues,

> Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

In other words, if a United States employee who is NOT an "investigative or law enforcement officer" commits one of these intentional torts, her conduct is typically excepted from the waiver of immunity and thus the United States cannot be sued. However, under the proviso, if she IS an "investigative or law enforcement officer" she is excepted from the exception and the wavier thus still applies. The bottom line, therefore, is this. If DEA agent Robert Yakubec meets the definition of "an investigative or law enforcement officer" of the United States, the United States can be sued under the FTCA even though Plaintiffs' claims are those types of intentional torts listed in § 2680(h): false imprisonment, false arrest, and malicious prosecution.

The pertinent question under § 2680(h) is whether the individual is *empowered* to exercise one of three alternative powers: execute searches, seize evidence, or make arrests. To determine what agent Yakubec is empowered to do, we look to the statutes and regulations governing DEA agents. First, 21 U.S.C. § 878(a) defines the powers of officers and employees of the DEA:

> Any officer or employee of the Drug Enforcement Administration . . . may. . . (2) execute and serve search warrants, arrest warrants . . . (3) make arrests without warrant . . . for any felony, cognizable under the laws of the United States, if he has probable cause to believe that the person to be arrested has committed or is committing a felony; (4) make seizures of property. . . .

Just reading this statute, it would appear that all DEA officers and employees are empowered with all three of the alternatives provided in FTCA § 2680 for defining a law enforcement officer. The United States, however, claims that the DEA agent in the instant case is merely a "diversion investigator," and that his powers are more limited than those authorized under 21 U.S.C. § 878(a). Specifically, the United States points to an Appendix to the Code of Federal Regulations that modifies the powers of DEA agents created under 28 U.S.C. §878(a). The

Appendix to Subpart R, 28 C.F.R., § 0.104, provides:

>  Sec. 3. Enforcement officers.
>
>  (b) All DEA Diversion Investigators (series 1801 under Office of Personnel Management regulations) are authorized to administer oaths and serve subpoenas under 21 U.S.C. 875 and 876; to conduct administrative inspections and execute administrative inspection warrants under 21 U.S.C. 878(2) and 880; to seize property incident to compliance and registration inspections and investigations under 21 U.S.C. 881; and to seize or place controlled substances under seal pursuant to 21 U.S.C. 824.

28 C.F.R. § 0.104. Appendix to Subpart R, Sec. 3(b).

While the Court agrees with the United States that the Appendix to Subpart R limits the scope of DEA Diversion investigators compared to DEA enforcement agents, it is clear that even diversion investigators are empowered to seize property. Moreover, seizure is one of the three alternatives listed in the FTCA to make an agent an "investigative or law enforcement officer" whose actions may subject the United States to liability under the FTCA even for the intentional torts listed in § 2680 and alleged in this case. Thus, even a Diversion investigator is a "investigative or law enforcement officer" under the FTCA.

The United States fares better in its second argument regarding whether Agent Yakubec's conduct is excepted from the waiver of immunity in the FTCA. As discussed below, the Court agrees that in implementing and conducting the investigation, and in requesting Deputy Carlisle to arrest Dr. Nguyen, Agent Yakubec was performing a discretionary function as that term is used in the FTCA. Such conduct is excepted from the immunity waiver of the FTCA by 28 U.S.C. § 2680(a). That section provides:

>  The provisions of this chapter and section 1346(b) of this title shall not apply to--
>  (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a

federal agency or an employee of the Government, whether or not the discretion involved be abused.

The Eleventh Circuit employs a two-part test for applying the discretionary function exception. First, we must determine whether the act "involv[es] an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (quoting Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)); Hughes v. United States, 110 F.3d 765, 767 (11th Cir. 1997). "[I]f a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' " there is no judgment or choice involved. Gaubert, 499 U.S. at 322, 111 S.Ct. at 1273 (quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958-59); see also Phillips v. United States, 956 F.2d 1071, 1076 (11th Cir. 1992) ("Where there exists a mandatory responsibility, there is no room for a policy choice."). The inquiry focuses on "whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." Hughes, 110 F.3d at 768. A decision will be subject to the exception unless "'a federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard.' " Id. (quoting Autery v. U.S., 992 F.2d 1523, 1529 (11th Cir. 1993)). No such fixed standard exists to mandate precisely when to arrest or not arrest without further judgment being required. Thus, the first prong is met here.

Second, if the conduct does "involv[e] an element of judgment or choice," we then look at " 'whether that judgment is of the kind that the discretionary function exception was designed to shield.' " Gaubert, 499 U.S. at 322-23, 111 S.Ct. at 1273 (quoting United States v. Varig Airlines, 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984)). In other words, the discretionary function exception is intended "to 'prevent judicial "second-guessing" of legislative

and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' " Id. (quoting Varig Airlines, 467 U.S. at 814, 104 S.Ct. at 2765). Thus, "when properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.' " Gaubert, 499 U.S. at 323, 111 S.Ct. at 1274 (quoting Berkovitz, 486 U.S. at 537, 108 S.Ct. at 1959).

    Previously, it was thought that this exception was limited to decisions at the policymaking or planning level. However, later cases have instructed that it may include day-to-day management, Gaubert, 499 U.S. at 325, 111 S.Ct. at 1275; Hughes, 110 F.3d at 768, so long as "'the decision is one we would expect inherently to be grounded in considerations of policy.' " Autery, 992 F.2d at 1530-31 (quoting Baum v. United States, 986 F.2d 716, 720-21 (4th Cir.1993)). "If the decision is inherently one allowing discretion, we presume that the act was grounded in policy whenever that discretion is employed." OSI, Inc. v. United States, 285 F.3d 947, (11th Cir. 2002).

    Thus, in Mid-South Holding Co., Inc. v. U.S., 225 F.3d 1201 (11th Cir. 2000), the Eleventh Circuit found that the U.S. Customs Service's decision to board and search a particular vessel met both prongs of the discretionary function test. The Court concluded, "We agree with the United States that the decision to board and search a vessel is the product of the balancing of various compelling policy considerations. " Likewise, in Mesa v. United States, 123 F.3d 1435 (11th Cir. 1997), the Court found that the manner in which agents executed an arrest warrant was covered by the discretionary function exception, concluding:

> The decision as to how to locate and identify the subject of an arrest warrant prior to service of the warrant is susceptible to policy analysis. For example, in deciding how extensively to investigate the location and identity of the subject, agents may weigh the urgency of apprehending the subject in light of such factors

*Case No: 1:04-cv-00026-MP-AK*

> as the potential threat the subject poses to public safety and the likelihood that the subject may destroy evidence. A desire to keep the investigation secret-for tactical reasons, to protect confidential sources, to protect the agents involved, or for other reasons-may also factor into the decision as to how to locate and identify the subject of a warrant. In addition, agents may consider their available resources and decide how to allocate those resources among the many investigations for which they are responsible. All of these factors indicate that the decision regarding how to locate and identify the subject of an arrest warrant is fundamentally rooted in policy considerations, and that judicial second-guessing of this decision thus is not appropriate.

Id. at 1438. In the instant case, the actions of the DEA agent were discretionary and susceptible to policy analysis. The agent was required to balance the desire to keep the confidential source and the investigation secret, his available resources, and the information at hand with the ability to obtain additional information. Thus, applying the conclusions of the Eleventh Circuit in Mesa, all of these factors indicate that the decision regarding how to investigate Dr. Nguyen and whether to arrest him are "fundamentally rooted in policy considerations, and that judicial second-guessing of this decision thus is not appropriate." Id. Accordingly, the Court concludes that the discretionary function exception to the waiver of sovereign immunity applies in this case, and the United States may not be sued based on the conduct of Agent Yakubec.

We now turn to Plaintiffs' motion for partial summary judgment against the Sheriff and the Deputy. As an initial matter, the Plaintiffs agree that for the false arrest claims, only the Sheriff - as official head of the Deputy's department - can be liable under Florida's sovereign immunity waiver statute, section 768.28. In that statute the State of Florida waived its sovereign immunity for certain species of liability, subject to various limitations. One of them is in § 768.28(9)(a), which provides, first, that no officer is personally liable in tort for injury suffered as a result of acts taken in the scope of his employment unless such officer acted in bad faith or

with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights; and, second, that in those instances where the officer cannot be sued individually, the exclusive remedy is an action against the head of the governmental entity that employs the officer. The suit must be against the head of the entity in his official capacity. In short, if the claim alleges that a Deputy Sheriff acted "with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights" the suit must be against the Deputy[3] himself. But if the claim alleges conduct less than that, the suit must be against the head of the employing entity, in this case the Sheriff. With this in mind, the Plaintiffs acknowledge the following with regard to the false arrest claims, which do not include allegations of malicious purpose:

> Plaintiffs agree the evidence discovered thus far reveals that deputy Carlisle was acting in the scope of his employment with the sheriff's office at all times relevant to this action. As a result Plaintiffs seek summary judgment on this claim [the false arrest count] only against deputy Carlisle's employer – Defendant Turner in his official capacity as Sheriff of Gilchrist County. See § 768.28(9)(a), Fla. Stat. (2004)

Next, with regard to the malicious prosecution claim, the Plaintiffs acknowledge:

> Since malicious prosecution is based upon malicious conduct, Sheriff Turner is not liable for deputy Carlisle's actions, but deputy Carlisle (through his Estate) is liable. Accordingly Plaintiffs seek summary judgment on this claim against deputy Carlisle and not against sheriff Turner.

Finally, with regard to the § 1983 claims, plaintiffs seek judgment against both the Deputy and the Sheriff. The liability of the Deputy is based on his direct involvement, and the liability of the Sheriff is based on an alleged failure to properly train or supervise the Deputy in the techniques for investigating doctors allegedly filling prescriptions without examinations.

---

[3]For sake of readability, the Court states merely "Deputy" here, but the Court recognizes that the Deputy's estate is the actual defendant at this point in the case.

Having reviewed the record in this case, the Court finds that summary judgment is inappropriate at this time.  First, with regard to the Deputy, the Plaintiffs themselves recognize discrepancies in the record concerning the degree to which the Deputy relied on solely the representations made by Agent Yakubec versus relying partly on his own observations.   This is important because an officer seeking a warrant is, in certain cases, permitted to base his request and affidavit on information supplied to him by fellow officers working on the same investigation.  *See* United States v. Ventresca, 380 U.S. 102, 111 (1965);  United States v. Kirk, 781 F. 2d 1498, 1505 (11th Cir. 1986).  However, an officer is required to complete a reasonable investigation before making an arrest and may not ignore readily available evidence.  *See* Kingsland v. City of Miami*,* 382 F.3d 1220, 1228 (11th Cir. 2004).  Determining the extent to which these requirements were met in this case will involve factual issues which are not suitable for summary judgment.  Additionally, with regard to the Sheriff, whether or not he provided appropriate training or was otherwise personally aware and participating in the Deputy's conduct are factual issues which are material and which preclude summary judgment.  Accordingly, it is hereby

    **ORDERED AND ADJUDGED:**

1. Defendant United States' Motion To Dismiss for Lack of Jurisdiction, Doc. 131, 134 is GRANTED and the United States is dismissed from this case.

2. Plaintiffs' Motion for Partial Summary Judgment against the United States, Doc. 139, and Plaintiffs' Motion for Partial Summary Judgment against David P. Turner ("Sheriff Turner") and the Estate of Kenneth H. Carlisle ("Carlisle"), are DENIED.

    **DONE AND ORDERED** this  *9th*   day of June, 2006

               *s/Maurice M. Paul*
               Maurice M. Paul, Senior District Judge