IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ANDREW NGUYEN MD PA,
ANDREW NGUYEN,
LINH NGUYEN,

    Plaintiffs,

v.                                                    **CASE NO. 1:04-cv-00026-MP-AK**

Estate of DEPUTY KENNETH H CARLISLE,
SHERIFF DAVID P TURNER,
and UNITED STATES,

    Defendants.

_____/

## O R D E R

This case went to a jury trial on various claims arising out of the arrest of Dr. Nguyen by Deputy Kenneth Carlisle pursuant to a joint investigation by the United States Drug Enforcement Agency and the Gilchrist County Sheriff's Office. Specifically, Dr. Nguyen claimed that Deputy Carlisle, while acting "under color" of state law, deprived the Plaintiffs of the Plaintiffs' rights under the Constitution of the United States not to be arrested or seized without probable cause. The jury found for the Plaintiffs on this claim and awarded $138,000 in economic damages and $170,000 in pain and suffering and loss of reputation damages. The plaintiffs also sued Sheriff Turner under the civil rights laws, asserting that the deprivation of the Plaintiffs' constitutional right to not be arrested or have property seized without probable cause was the direct result of a policy or custom of the Sheriff. The jury found against the plaintiffs on this claim and awarded no damages.

Next, plaintiffs sued the Sheriff in his official capacity for the false arrest they alleged was committed by Deputy Carlisle. The suit was against the Sheriff because under Fla. Stat.

768.28(9)(a), when a claim is made against a governmental employee and it does not include an element of malice or bad faith, the "exclusive remedy" is an "action against the government entity, or the head of such entity." False arrest does not contain an element of malice or bad faith. The jury found in favor of the plaintiffs on this claim, and awarded $532,000 in economic damages, $8,100 for legal costs, and $666,000 in pain, suffering and loss of reputation damages.

Lastly, plaintiffs sued Deputy Carlisle (through his estate) for malicious prosecution. Here, the suit was brought against Deputy Carlisle individually instead of the government entity (sheriff's office) or the head of the entity (the sheriff). This was because malicious prosecution requires a finding of legal malice, and Florida cases have held that this malice requirement removes this cause of action from the reach of 768.28(9)(a). This is true even though the "legal malice" required to prove malicious prosecution is not the same type of personal animosity or vindictiveness typically associated with crimes involving malice. Thus, the jury was instructed as follows:

> With regard to the element of malice, such malice may be one of two kinds: (a) actual or subjective malice, sometimes called 'malice in fact,' which results in intentional wrong; and (b) 'legal malice,' which may be inferred from circumstances such as the want of probable cause, even though no actual malevolence or corrupt design is shown. That is, the plaintiff need not show "actual malice" such as a vindictive purpose or personal animosity. Instead, such malice may be inferred from the circumstances in a malicious prosecution action, from a total lack of probable cause, from a failure to make reasonable or suitable inquiry, from gross negligence or great indifference to persons, property, or the rights of others, from a showing of personal animosity, or when the evidence shows that the claimant acted with absence of caution and inquiry that a person should employ before filing a suit.

The jury found in favor of the plaintiffs on this claim, and awarded $138,000 in economic damages and $170,000 in pain, suffering and loss of reputation damages. In doc. 192, the Court entered judgment in accordance with the verdict, but stated that "separate judgment will be

entered by the Court as to the damages and attorney's fees and costs, if applicable."

In doc. 193, the plaintiffs filed their Motion for Entry of Judgment and Supporting Memorandum of Law. The motion seeks more than simply the entry of judgment, however. In the motion, the plaintiffs argue that the jury must have been confused in the manner it divided the amount of damages among the various claims. Instead, the plaintiffs argue that the Court should make the Sheriff and the Deputy jointly and severally liable for the entire sum of damages awarded the plaintiffs. As the plaintiffs put it:

> The Special Interrogatories to the Jury form submitted to the jury was somewhat confusing in that it provided blanks for the jury to specify the damages attributable to the various claims and Defendants, but did not provide a space for the jury to indicate the total amount of damages. Notwithstanding the confusing nature of the form, it is clear that the jury found Plaintiffs had suffered $1,836,100 in total damages which it simply divided up among the claims using the form provided.
>
> * * * *
>
> The jury in this case clearly intended to compensate Plaintiffs' for their injuries in the amount of $1,836,100, including economic damages in the exact amount Plaintiffs' counsel requested at trial.

In his closing arguments, Mr. Rush actually requested that the jury award $705,200 as economic damages suffered by Dr. Nguyen individually, $120,000 as economic damages to the professional association, $8,100 as previous legal costs (incurred fighting the criminal charges, not in prosecuting the instant law suit), and $1,000,000 in pain, suffering and loss of reputation damages. These add up to around $1,830,000. He then asked the jury to put the full amount of each in the space for every claim. At first blush, therefore, it appeared that he sought around $7,200,000. The argument quoted above, however, indicates the he intended for the jury to award a total of around $1,830,000, and for each defendant to be jointly and severally liable. A review of the jury's verdict reveals that they did award all of the $1,830,000 asked for by Mr.

Rush, but that they allocated that total among the various claims. This was the Court's intent in the manner in which the jury verdict form was designed.

Plaintiffs now argue, however, that this allocation was improper and that the defendants should be jointly and severally liable:

> In this instance, Plaintiffs' injuries were caused by the unconstitutional false arrest of Dr. Nguyen. Although the jury found Defendants liable under three different causes of action, the fact remains that there was only one injury from Defendants' actions. Under Florida law, "when the tortfeasors, acting in concert or through independent acts, produce a single injury," they are jointly and severally liable. Acadia Partners, L.P. v. Tompkins, 759 So. 2d 732, 736 (Fla. 5th DCA 2000). Where defendants are jointly and severally liable, each is liable for the entire injury. Borden, Inc. v. Florida East Coast Ry. Co., 772 F.2d 750, 753 (11th Cir. 1985) ("Under Florida law, joint tortfeasors are jointly and severally liable for all damages recoverable by the plaintiff.") Moreover, apportionment of damages is not appropriate for intentional torts nor is it appropriate in the context of vicarious liability, as with Sheriff Turner's responsibility for Deputy Carlisle's actions. See § 768.81(4)(b), Fla. Stat. (2006) (apportionment of damages does not apply to intentional torts); Grobman v. Posey, 863 So. 2d 1230, 1235 (Fla. 4th DCA 2003) (apportionment of damages under 768.81 does not apply in the context of vicarious liability). Judgment in this case should be entered to reflect Defendants' joint and several liability for Plaintiffs' single injury.

Doc. 193. The Court disagrees with Plaintiffs' view of the injury in this case, and concludes that the jury correctly allocated damages between the distinct causes of action present in this case. Additionally, the jury's allocation of damages avoided the potential quadruple-counting of damages that would have occurred had they followed Mr. Rush's suggestion to apply the full amount of loss to each claim.

In Jackson v. Navarro, 665 So 2d 340 (Fla. 4th Dist. Ct. of App. 1995), the Court noted the clearly drawn line of demarcation distinguishing false arrest and malicious prosecution. The Court observed:

> It is clear from looking at the elements of malicious prosecution and false imprisonment that the former arises out of the wrongful commencement of a

judicial proceeding, which the latter occurs when there is an improper restraint which is not the result of a judicial proceeding. William Prosser, LAW OF TORTS §119 (4 Ed 1971) explains the distinction between malicious prosecution and false imprisonment as follows: [T]he difference is one of the regularity of the legal process under which the Plaintiff's interests have been invaded. If he is arrested or confined without a warrant, or legal authority apart from the warrant, malicious prosecution will not lie, since the essence of the tort is the perversion of proper legal procedure. On the other hand, if there is legal process of due authority apart from it, the arrest is not 'false' and the action must be one of malicious prosecution.

In short, false arrest and malicious prosecution are simply different wrongs with different injuries. Moreover, the structure of 768.28 expressly creates different treatment for the two types of claims. Since Deputy Carlisle was acting in his role as a deputy at the time of the arrest that gave rise to Plaintiffs' claims, ordinarily F.S.A § 768.28(9)(a) would extend a veil of sovereign immunity to prevent Plaintiffs from proceeding against Carlisle individually, and would only permit Plaintiffs to take action against the Sheriff in his official capacity. However, § 768.28(9)(a) does not extend this veil of immunity if the employee committed the act with, inter alia, "malicious purpose."

As the Court stated in Sebring Utilities Com'n v. Sicher, 509 So.2d 968, 970 (Fla.App. 2 Dist.,1987)

> Malice is not only an essential element of malicious prosecution; it is the gist of such a cause of action. *Wilson v. O'Neal,* 118 So.2d 101 (Fla. 1st DCA 1960). Section 768.28(9), therefore, bars an action against "state agencies or subdivisions" based upon malicious prosecution. *Hambley v. State, Department of Natural Resources,* 459 So.2d 408 (Fla. 1st DCA 1984). Therefore, section 768.28(9) affirmatively bars suits against municipalities for malicious prosecution arising from the malicious acts of their employees. *City of Coconut Creek v. Fowler,* 474 So.2d 820 (Fla. 4th DCA 1985).

Thus if Carlisle acted with sufficient legal malice to fulfill the elements of the malicious prosecution claim, then he also acted with sufficient malice to fall outside the protection afforded

him by §768.28(9)(a), and the governmental entity cannot be held responsible for his misconduct. Accordingly, Plaintiffs were permitted to proceed directly against Carlisle on the malicious prosecution claim, and were conversely unable to proceed against the Sheriff on that claim for according to the statute, the Sheriff could not be held liable for acts committed by a deputy with, inter alia, "malicious purpose."

The effect of all this on plaintiffs request for joint and several liability is that imposing it would contravene the goal behind 768.28(9). In short, the legislature intended for individual government employees -- and not the government entity -- to be liable for malice-based torts (including legal malice). But for torts involving lesser culpability, the legislature intended to protect the employees completely (through immunity from suit), and to limit the exposure of the governmental entity, (through the liability cap in 768.28(5)).[1] Allowing imposition of joint and several liability in this case would give plaintiffs an end-run around these protections intended by the legislature. Accordingly, the Court concludes that joint and several liability is not appropriate in this case.

The Court agrees with the plaintiffs, however, that any sovereign immunity cap applicable in this case should not be considered when issuing the judgment. The sovereign immunity cap does not operate to limit the amount of the judgment against the Sheriff; instead it limits only the amount of recovery. See § 768.28(5), Fla. Stat. (2006) ("a judgment . . . may be claimed and rendered in excess of these amounts . . . and that portion of the judgment that

---

[1] Section 768.28(5) states, "Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000."

exceeds these amounts may be reported to the Legislature . . . ."); Berek v. Metropolitan Dade Cty., 422 So. 2d 838, 840-41 (Fla. 1982) ("section 768.28(5) authorizes the rendition of judgment in excess of the maximum amount which the state can be required to pay. . . . These provisions recognize that the judgment and postjudgment assessments to be entered of record should upon motion of the plaintiff be the full amount of actual damages suffered, costs, and post-judgment interest and not the amount of the defendant's liability). Thus, judgment will be entered without regard to any potential sovereign immunity cap regarding claims against the Sheriff.

Also pending in this case are two post-trial motions for judgment as a matter of law, filed by Sheriff Turner (doc. 197) and Deputy Carlisle (doc. 198). In Sheriff Turner's motion, he raises an argument specifically raised and rejected during the trial. He argues that "[a]n arrest pursuant to a warrant which is valid on its face is not a false arrest....'so long as a warrant is valid on its face, the officer is entitled to an absolute grant of immunity springing from the judicial immunity of the judicial officer who issued the warrant.'" Doc. 197, p. 3 (quoting Willingham v. City of Orlando, 929 So 2d 43 (5 DCA 2006)).

In the cases Defendants rely on, the "facially valid warrant" defense applied because arresting officers who are not involved in procuring an arrest warrant do not have discretion to second guess the court's warrant or refuse to execute it. See Willingham v. City of Orlando, 929 So. 2d at 49, and cases cited therein. In this instance, of course, deputy Carlisle himself procured the arrest warrant based on false information so it was not "facially valid" as to him. As such, when he falsely arrested Dr. Nguyen, Sheriff Turner as his employer was liable for that false arrest. The authorities Defendant cites are not to the contrary. In fact, they confirm that invalid

and void arrest warrants do not constitute legal authority that defeat a false arrest claim. See Willingham, 929 So. 2d at 49 ("If the imprisonment is under legal authority it may be malicious but it cannot be false. . . void process will not constitute legal authority within this rule."); U.S. v. Morris, 477 F.2d 657, 662 (5th Cir. 1973) ("when an affidavit contains inaccurate statements which materially affect its showing of probable cause, any warrant based upon it is rendered invalid."); Pagan v. State, 830 So. 2d 792, 807 (Fla. 2002) (if omitted facts had been added to affidavit, it would defeat probable cause, or if the affidavit would fail to establish probable cause if the false facts are deleted, the warrant must be voided), cert. denied, 539 U.S. 919 (2003). The Court therefore concludes that the false arrest verdict and judgment against Sheriff Turner is valid and should not be set aside.

Also, the Court rejects the argument that a finding of malice under the malicious prosecution claim applies to the false arrest claim, thus triggering the statutory immunity of the Sheriff. Case law holds uniformly that there is no sovereign immunity from false arrest. See Dickinson v. Gonzales, 839 So. 2d 709, 713 (Fla. 3d DCA 2003) (no sovereign immunity for false arrest); Sego v. City of Fernandina Beach, 771 So. 2d 1235, 1235 (Fla. 1st DCA 2000) (same); Lester v. City of Tavares, 603 So. 2d 18, 19 (Fla. 5th DCA 1992) (same); Richardson v. City of Pompano Beach, 511 So. 2d 1121, 1122-24 (Fla. 4th DCA 1987) (city not immunized from intentional torts of employees committed during scope of employment). Plaintiffs have argued this throughout the litigation and Defendants have not cited any authority to the contrary. Finally, for the reasons given in the orders at doc. 118 and 178, the Court rejects for the third time the argument that Dr. Nguyen's professional association cannot recover damages in this case. Sheriff Turner's motion for judgment as a matter of law at doc. 192 is therefore denied in

its entirety.

In its motion for judgment as a matter of law, Deputy Carlisle's estate again raises the argument that actual malice, rather than legal malice, is required for malicious prosecution. As the Court ruled during the jury-charge conference, Florida courts have consistently rejected this argument. See, e.g., Durkin v. Davis 814 So.2d 1246, 1248 -1249 (Fla.App. 2 Dist. 2002)("As to malice on the part of the defendants, the plaintiff need not allege actual malice; legal malice is sufficient and may be inferred from, among other things, a lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others.")

The Court also rejects Deputy Carlisle's qualified immunity argument. Before the conduct at issue in this case occurred, the law was clearly established that officers cannot arrest people without probable cause and cannot use knowingly or recklessly false statements in support of a warrant. The law was equally well-established that police officers have an obligation to conduct minimal, reasonable investigations that do not ignore readily available evidence. Deputy Carlisle conducted no reasonable investigation, had no personal knowledge about what a proper medical examination entailed, and claims he chose not to review readily available information that would have clearly shown proper medical examinations. There was not even arguable probable cause to arrest Dr. Nguyen in this instance and Deputy Carlisle knew

it or should have known it if he had acted as a reasonable police officer under the circumstances.

He is therefore not entitled to qualified immunity.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The motions for judgment as a matter of law, docs. 197 and 198, are denied.

2. The motion for entry of judgment, doc. 193, is granted in part and denied in part, as discussed above. The Clerk should enter a judgment consistent with the jury's verdict and not imposing joint and several liability.

**DONE AND ORDERED** this   23rd    day of May, 2007

*s/Maurice M. Paul*

Maurice M. Paul, Senior District Judge
